**Jared D. BOWEN, Appellant,**

v.

**CALALLEN INDEPENDENT SCHOOL DISTRICT et al., Appellees.**

**No. 1576.**

Court of Civil Appeals of Texas, Corpus Christi.

June 12, 1980.

Rehearing Denied Aug. 29, 1980.

Larry Watts, and George Kirk, Law Office of Larry Watts, Houston, for appellant.

J. M. Burnett, H. T. Hermansen, Jr., Kleberg, Dyer, Redford & Weil, Fred C. Auforth, Auforth, Keas & O'Reilly, Corpus Christi, for appellees.

## OPINION

BISSETT, Justice.

This teacher nonrenewal contract case involves an appeal by the teacher, Jared D.

Bowen, from an order of the District Court of Nueces County, Texas, granting summary judgment in favor of the defendants, Calallen Independent School District (the District), the District's Board of Trustees (the Board), Clyde Teague (the Superintendent), and Guy Martin (the Principal). The Superintendent, Principal and individual members of the Board all were sued in both their official and individual capacities. We affirm.

Plaintiff claimed that the nonrenewal of his employment contract with the District violated his contract with the District, his constitutional rights of free speech and due process, certain policies and various practices of the Board, and the Texas Open Meetings Act. For these alleged violations, he sought reinstatement to his former position and damages.

Plaintiff presents one point of error. It contains several subpoints, wherein it is contended that the trial court erred in granting defendants' motion for summary judgment because a number of fact issues were raised by the pleadings. Specifically, it is asserted that the pleadings raise material fact questions concerning: 1) whether defendants violated the provisions of certain Board policies and practices; 2) whether the decision not to renew plaintiff's contract of employment was "motivated by his complaints to his administrative superiors regarding the substance and the procedure of the evaluation of his job performance" in such a way that his right of free speech under the First Amendment to the Constitution of the United States was violated; 3) whether plaintiff received procedural due process under the Fourteenth Amendment to the Constitution of the United States concerning "his evaluation and dismissal and the past custom and practice" of the Board; 4) whether the Board violated the "Texas Open Meetings Law" by voting in executive session to terminate plaintiff's employment; 5) whether the Superintendent or the Principal violated the Code of Ethics and Standard Practices for Texas Educators in evaluating plaintiff; and 6) whether the defendants unilaterally breached plaintiff's contract of employment.

The general rule is that where a plaintiff's petition fails to state a cause of action and the defendant does not level special exceptions to the pleading which would give the plaintiff an opportunity to amend to state a cause of action, it is error to grant a summary judgment on the pleadings alone. *Texas Department of Corrections v. Herring*, 513 S.W.2d 6 (Tex.Sup. 1974). The *Herring* case, though, also pronounces an exception to the rule. Specifically, where a plaintiff pleads facts which affirmatively negate his cause of action, it is proper for the trial court to grant defendant's motion for summary judgment. To be determined in this appeal is whether the case at bar is governed by the rule or by its exception. In doing so, we must consider as proven the facts alleged by the plaintiff. *Trucker's Inc. v. South Texas Const. Co.*, 561 S.W.2d 855 (Tex.Civ.App.—Corpus Christi 1977, no writ); *Bexar Plumbing Co. v. McKittrick, Etc., Architects*, 532 S.W.2d 112 (Tex.Civ.App.—Houston [1st Dist.] 1975, no writ).

Plaintiff alleged that he was initially hired as Band Director by the Board in August, 1974, and was hired for a fixed term of one year, the school year 1974–1975. He further alleged that his contract was renewed for the school year 1975–1976, but was not renewed for the school year 1976–1977. The Superintendent, at the time plaintiff was hired, assured him that annual contract renewals were based on merit and performance, and that he "looked forward to a long and successful relationship." Exhibit "A," attached to the petition, states that the District did not have a continuing contract policy of employment, nor had it adopted the provisions of the "tenure" law with respect to future employment.

At all times pertinent to this appeal, there was in existence Board Policies 4118 and 1312. Board Policy 4118, according to plaintiff's allegations, reads:

"RE–EMPLOYMENT AND DISMISSAL POLICY FOR PROFESSIONAL PERSONNEL CALALLEN INDEPENDENT SCHOOL DISTRICT

The Board shall rely upon the superintendent to nominate all employees and to

recommend for discharge the employees rendering unsatisfactory service. These recommendations shall be based on evaluation of the employee's work by the principal or the superintendent.

The dismissal of any employee is preceded by a warning and a statement of deficiencies in writing. The initiative for this warning may come from the Board, the principal or the superintendent. Dismissal of any employee shall occur only after efforts by the administration or supervisory official to assist the employee have failed to result in improvement.

If a teacher has not received a written notice of unsatisfactory service by the superintendent or principal on or before April 1st, he/she shall consider that his/her contract will be extended for the next school year. In the month of May each year, the Board shall enter into the minutes a resolution extending the contracts of the teachers to be re-employed.

Such acts as immoral conduct, breach of contract, insubordination, wilfull (sic) neglect of duty, flagrant disregard of board and administration policies are sufficient grounds for dismissal any time. On written notice of any such acts of misconduct where immediate discharge of the teacher is contemplated, the teacher shall:

(1) Be advised in writing of the specific act or acts of misconduct;

(2) Be entitled to be heard before the Board on such allegations prior to final determination provided that he/she shall, within five (5) days from the date of such notice request a Board hearing;

(3) On giving of such request for hearing, a five (5) day period shall be accorded teacher, should he/she request the same prior to Board hearing;

(4) Teacher may be suspended by the Superintendent on the date of such notice pending final Board determination.

Nothing in this statement of policy shall be so construed or implied that the Calallen Independent School District has a continuing contract or any tenure of employment policy."

Board Policy 1312 provides:

"*Complaints Concerning School Personnel* Complaints by parents or citizens in the community or by fellow school personnel will first be discussed with the teacher or worker involved and his immediate building principal.

If no satisfactory solution can be obtained and the problem or complaint needs further attention, then the problem should be submitted, in writing to the Superintendent of Schools.

If further action is required, the Superintendent of Schools will then submit the written complaint to the Board of Trustees for proper Board action."

The first year of plaintiff's employment was successful in every respect, and plaintiff was complimented by his supervisor and by parents of band students for his fine work and band program. In the second school year (1975–1976), plaintiff instituted a more comprehensive grading system for members of the band, which, although approved by the Principal for implementation, was subsequently opposed by parents of some of the band members. Thereafter, according to the petition, "apparently and without plaintiff's knowledge," some of the parents and their "children in the band," established "a negative dialogue" regarding plaintiff with the Principal, "the substance of which was never and has never been passed on to plaintiff." On November 20, 1975, plaintiff received a letter from the Principal, wherein he was reminded of "the problems we are having in our band program" relating to "lack of enthusiasm" among the band members, "decline of the morale and pride of the band as a whole," and the "current dissatisfaction" with the plaintiff and his program "among members of the band." The letter further stated that the problems "are growing worse," and that the writer did not "see any signs" of a solution. The letter concluded with the following statement:

"Regardless of the reasons, I feel that you have failed to win the students over

to your program and I must advise you that it would be in your best interest to consider seeking employment elsewhere."

In December, 1975, at a conference between the Superintendent and plaintiff, the Superintendent told plaintiff that he knew nothing about the problems with the band; that it was plaintiff's responsibility to correct them, and that if he failed to do so, and thereafter did not resign, the renewal of his contract would not be recommended to the Board. On March 8, 1976, plaintiff received the following letter (dated March 4, 1976) from the Principal:

"On November 20, 1975, I wrote a letter to you pointing out problems I felt we were having in our high school band program. I do not think the program has improved since that time, and I am officially notifying you that I will not recommend you to the superintendent for re-employment as band director for the 1976–77 school year."

After having been notified that his contract was not renewed, plaintiff asked for an open hearing before the Board on the matter of nonrenewal of his contract. The hearing was held on April 5, 1976, and plaintiff, according to his allegations, was given "orally, and for the first time, a recitation of specific reasons for non-renewal of his contract." The Board then went into a "closed executive session," and later announced in open session that it had "voted in executive session to uphold their original decision of March 15, 1976, to non-renew plaintiff's contract for the 1976–77 school year." The decision of the Board was appealed to the Commissioner of Education, who denied jurisdiction thereof.

Plaintiff further alleged that defendants violated Board Policy 4118 by failing to observe and evaluate his work in conformity with the Board's published guidelines; by failing to supply him with an adequate warning and written statement of deficiencies; and by failing to assist him "in improving whatever it was plaintiff had allegedly failed to do." He also alleged that defendants violated Board Policy 1312, "in letter and spirit," by intentionally withholding parent and student complaints from him, rather than "performing according to their policy which is clear and self-explanatory on its face."

Since Board Policy 4118 shows that the Board had not adopted the provisions of Tex.Educ.Code Ann. Ch. 13, §§ 13.101–13.-116 (1972) "Teachers' Employment contracts" at any time material to this appeal, we first determine whether the Board Policies set out in the petition, or either of them, conferred upon plaintiff a *de facto* tenure which afforded him something more than a mere expectancy of continued employment beyond the one-year term of his initial contract. In resolving that issue, we take note of certain well settled rules of law which have been applied to cases of this nature.

■ The general rule is that operational policies promulgated by a school board prior to making a contract of employment with a teacher form part of the contract, and the teacher's employment is subject thereto. *Arlington Independent School District v. Weekley*, 313 S.W.2d 929 (Tex.Civ.App.—Fort Worth 1958, writ ref'd n. r. e.); *Romeike v. Houston Independent School Dist.*, 368 S.W.2d 895 (Tex.Civ.App.—Waco 1963, no writ).

■ Failure of a school district to follow its own policies and practices with respect to the renewal of teacher employment contracts affect the teacher's right to constitutional due process. See *Vitarelli v. Seaton*, 359 U.S. 535, 79 S.Ct. 968, 3 L.Ed.2d 1012 (1959), and *Burmanan v. Bay City Ind. School Dist.*, 445 F.Supp. 927 (S.D.Tex. 1978).

In *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), the United States Supreme Court, in a case involving nonrenewal of a one-year teacher contract, held that a teacher cannot attack the school's decision not to rehire him on the ground that he was denied procedural due process unless he can show that the decision somehow deprived him of an interest in "liberty" or that he had a "property" interest in continued em-

ployment despite the lack of tenure or a new contract covering the year in question. According to the Court, where a person is simply not rehired in one job while remaining free to seek another, his liberty is not involved. The Court further stated that it would be a different case, however, if the school made a public charge against the teacher that might seriously damage his standing in the community or stigmatize the teacher to the extent that his freedom to take advantage of other similar employment opportunities was limited. Furthermore, according to the Court, to have a "property" interest, a teacher must have more than an abstract desire for, or unilateral expectation of, future employment. He must have a legitimate claim of entitlement to future employment, and such claim must have been created by some source external to the Constitution.

The Court's announcements in *Roth* were echoed and embellished in the companion case of *Perry v. Sinderman*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972). In that case, with respect to *de facto* tenure, the Court said that it is quite possible that a teacher without *de jure* tenure may be able to prove *de facto* tenure by custom and practice.

The issue of *de facto* tenure in a teacher renewal case was addressed by this Court in *Hix v. Tuloso Midway Independent School District*, 489 S.W.2d 706 (Tex.Civ.App.—Corpus Christi 1973, writ ref'd n. r. e.). There, we held that the mere fact a teacher has been rehired before does not constitute any evidence that the school district has impliedly contracted with him to renew his contract every year. In a clear acknowledgment of the holdings in *Roth* and *Sinderman*, we held that procedural due process is not required unless the teacher has *de jure* or *de facto* tenure.

■ The facts alleged negate that plaintiff had any "tenure" *de jure* or *de facto*, or that he had a reasonable expectation of tenure because of Board policies or practices. Plaintiff has not alleged a "property" interest in the renewal of his contract.

■ Having determined that the allegations in plaintiff's petition do not disclose a "property" interest in the matters in issue, we next consider whether plaintiff had a "liberty" interest therein. The petition is lacking in any allegation that any of plaintiff's liberty interests as those interests are defined in *Board of Regents v. Roth*, supra, were violated. There is no suggestion in plaintiff's petition that his right to contract with other school districts was in any way interfered with by defendants, or that any liberty interests possessed by plaintiff were denied to him by any action of the defendants. There is no pleading that the Board, in declining to renew plaintiff's contract and thereby re-employ him, imposed any stigma or other limiting factor that foreclosed his freedom to take advantage of other band director employment opportunities. There are no allegations in his petition that plaintiff's exercise of his right of free speech influenced the Board in its decision not to renew his contract. The allegations in the petition negate plaintiff's conclusions that he was deprived of any liberty or property interests.

■ "The requirements of procedural due process apply only to the deprivation of interest encompassed by the Fourteenth Amendment's protection of liberty and property." *Board of Regents v. Roth*, supra, 408 U.S. at page 569, 92 S.Ct. at page 2705, 33 L.Ed.2d at page 557. *Moore v. Knowles*, 377 F.Supp. 302 (N.D.Tex.1974), aff'd 512 F.2d 72 (5th Cir. 1975). Plaintiff's allegations negate the conclusion that he was denied due process.

Plaintiff further contends that he had a reasonable expectation that the Board would comply substantially with its own duly promulgated policies, and that the Board violated Policies 4118 and 3112. He alleged, in essence, that the Board was precluded from refusing to renew his contract because of such violations.

■ Board Policy 4118 is limited to dismissal and re-employment of teachers. The words "discharge" and "dismissal" as used in the body of the instrument mean the same thing—the termination of a contract

before the expiration date set out in the contract. Nonrenewal occurs when a teacher is permitted to serve the full contract term, but is not offered a new contract for the following school year. Such failure to renew is not tantamount to dismissal or discharge because a contract for a specified length of time automatically expires at the end of the term. In this case, an expectation of renewal cannot arise unless the affected teacher has not received a written notice of unsatisfactory service by April 1. The word "re-employment," as used in the caption of Policy 4418, can only mean the renewal of an existing contract, to take effect upon the expiration of an existing contract.

The policy in question provides for certain procedures where a teacher is *discharged* or *dismissed* for a) unsatisfactory service or b) misconduct. It further provides for renewal of existing contracts, but does not set out any procedures, except that a teacher may expect a renewal of his contract if he has not received a written notice of unsatisfactory service by April 1. There are no allegations that plaintiff was discharged or dismissed prior to the expiration of the term relating to his contract of employment for the 1975–1976 school year. Consequently, the provisions for warning, statements of deficiencies in writing, efforts by supervisory school personnel to assist the teacher in correcting the deficiencies, and a hearing before the Board before final determination, are not applicable in this case. The only issue here presented is nonrenewal for unsatisfactory service. There was full compliance with Board Policy 4118 since plaintiff alleged that he had received a written notice of unsatisfactory service from his Principal before April 1, 1976. That notice plainly advised plaintiff that the Principal would not recommend that his contract be renewed for the ensuing school year. It was not a notice that plaintiff would be *discharged* or *dismissed* for unsatisfactory service. The only logical interpretation of Policy 4118 leads to the conclusion that it was intended by the Board, in adopting that policy, to enter into contracts for one year, and that the Board

reserved to itself the right to refuse to renew the contract, *with* or *without cause*, provided notice not to renew was furnished the teacher by the superintendent or principal on or before April 1 during the existing contract year.

Board Policy 3112, of itself, does not require any kind or type of evaluation of a teacher with respect to nonrenewal of teaching contracts. Neither does it set out any definite standards or procedures to be followed by the school administration because of deficiencies, which, if not corrected, might or could lead to nonrenewal of teaching contracts. Nothing appears therein which requires the Board to vote on or to consider whether the affected teacher's "evaluation," or "deficiencies" played any part in the renewal or nonrenewal of the contract. In short, Board Policy 3112 has nothing to do with the renewal of a teacher's contract of employment. It provides procedures for solving complaints, and nothing more.

In summary, it is clearly established by plaintiff's pleadings that plaintiff has neither a contractual right, property interest or liberty interest to protect. The pleadings show on their face that there has been no violation of either Board Policy 4118 or Board Policy 3112. See *Doscher v. Seminole Common Consolidated Sch. Dist. No. 1, Gaines County, Tex.*, 377 F.Supp. 1166 (N.D. Tex.1974); *Moore v. Knowles*, supra. In this case, plaintiff's pleadings negate the denial of any rights afforded him under either the First or the Fourteenth Amendments to the Constitution of the United States.

Plaintiff's reliance upon *Burnaman v. Bay City Ind. Sch. Dist.*, 445 F.Supp. 927 (S.D.Tex.1978), is misplaced. In that case the policies of the School Board gave teachers three relevant rights concerning renewal contracts. They were: 1) the right to have annual evaluations performed on the basis of definite, objective standards described in a certain Policy; 2) the right to have the school administration follow a definite procedure in connection with nonrenewal; 3) the right to a hearing before the

**236**

Board in the event of nonrenewal within thirty days following written request for such hearing. The Court found that all three rights conferred on the teachers had been violated. In the case at bar, there are no such procedures set out in either Board Policies 4118 or 3112 where a teaching contract is not renewed.

 Next, we turn to plaintiff's claim for relief arising out of the Board's alleged violation of the Texas Open Meetings Act. It, in general, prohibits governmental bodies, including school boards, from holding any closed meetings or executive sessions, with certain exceptions. One exception is found in section 2(g), which provides that nothing in the Act

> "shall be construed to require governmental bodies to hold meetings open to the public in cases involving the appointment, employment, evaluation, reassignment, duties, discipline, or dismissal of a public officer or employee or to hear complaints or charges against such officer or employee, *unless such officer or employee requests a public hearing.*" (emphasis added).

In *Corpus Christi C. T. A. v. Corpus Christi I. S. D.*, 535 S.W.2d 429 (Tex.Civ. App.—Corpus Christi 1976, no writ) we held that Section 2(g) of the Texas Open Meetings Act unqualifiedly prohibits a school board's discussion, *over a teacher's objection*, of that teacher's *dismissal* in closed session. That case involved a teacher who requested a public hearing regarding his dismissal, which was granted and held, but who objected at such hearing when the school board proceeded into closed session before a final decision to dismiss was subsequently made in open meeting. In the case at bar, there is no allegation in plaintiff's petition that he objected when the Board moved to enter into executive session. The minutes of the April 5, 1976, meeting, which are quoted in plaintiff's petition, do not indicate any objection or exception made by plaintiff at the crucial time.

We hold that the allegations in plaintiff's pleadings affirmatively negate his asserted cause of action against the defendants. We have carefully considered all of plaintiff's points of error. They are overruled.

The judgment of the trial court is AFFIRMED.