**Troy BURRIS**

v.

**WILLIS INDEPENDENT SCHOOL DISTRICT, et al.**

**Civ. A. No. H–80–1450.**

United States District Court,
S. D. Texas,
Houston Division.

April 19, 1982.

Larry Watts, Houston, Tex., for plaintiff.

Bracewell & Patterson, Kelly Frels, Houston, Tex., for defendants.

## MEMORANDUM AND ORDER

STERLING, District Judge.

This is a 42 U.S.C. § 1983 damage action brought because the Plaintiff's contract of employment as an administrator was not renewed for the 1980–81 school year by the Defendant School District. Due to the disposition of the case, the facts will be summarized with all reasonable inferences drawn in favor of the Plaintiff.

Mr. Troy Burris worked for the Willis Independent School District (WISD) as the Vocational Education Director for approximately two years starting in August, 1978. All WISD professional personnel except the Superintendent were employed under one year term contracts. Plaintiff's initial contract was renewed. When he was considered for a second renewal in February, 1980, the six member School Board divided equally, and the question of his retention was postponed to the next Board meeting.

Normally, seven trustees served on the Board, but one member of the "old-line" of the Board of Trustees resigned before the aforementioned vote, allegedly as a result of political scheming by the "new-line" members. Three Defendants, Alston, Ozment, and Reeves, comprised the "new-line" at that time and voted against the Plaintiff. By April 19, 1980, the date when Plaintiff's contract was next considered, three more Defendants, Atkinson, Lee and McKeehan, had been elected to the Board, thus replacing all but one member of the "old-line", Edgar Straughter.

At the April vote all trustees except Straughter, who abstained, voted against the renewal of Burris' contract. Superintendent Clayton Todd, Plaintiff's evaluator, had rated him favorably on two earlier annual ratings and had consistently recommended him for retention. After declining to renew his contract, the Board refused to grant Plaintiff a grievance hearing.

Plaintiff alleged violations of several constitutional provisions and demanded trial by jury. After all evidence was heard, the Court granted the Defendants' motion for a directed verdict pursuant to Rule 50(a), Fed.R.Civ.P. In directing a verdict the Court followed the guidelines expressed in *Boeing Co. v. Shipman*, 411 F.2d 365 (5th Cir. 1969), and determined that under applicable law "reasonable men [and women] could not arrive at a contrary verdict." *Id.* at 374.

*Legislative Immunity*

All of the individual Defendants in this case were elected officials who were selected by the voters so that they might exercise their best judgment in managing the affairs of the Defendant School District. The Defendants testified without contradiction that they were elected primarily upon the basis of their convictions that they could improve the School District and establish a high-quality educational system. Decisions made in a legislative capacity by governing members of political subdivisions of the states are absolutely immune from attack under section 1983. *See Lake County Estates v. Tahoe Planning Agency*, 440 U.S. 391, 405, 99 S.Ct. 1171, 1179, 59 L.Ed.2d 401 (1979); and *Hernandez v. City of Lafayette*, 643 F.2d 1188, 1193 (5th Cir. 1981), *cert. denied,* —— U.S. ——, 102 S.Ct. 1251, 71 L.Ed.2d 444 (1982).

Not all of the actions taken by the Defendants in this matter can fairly be characterized as "legislative," but all decisions were taken in the context of a legislatively formed program to change the schools for the better. In this context it is inappropriate for a court or jury to impose its judgment on that of the elected officials. Similarly, Plaintiff is entitled to federal interference in the operation of a local governmental body under the aegis of the due

process clause only if he clearly shows deprivation of one of his constitutional rights. Plaintiff failed to make such a showing.

### Property Interest

■ Plaintiff claimed he possessed a property interest in continued employment and was deprived of that property without due process of law, thus violating his fourteenth amendment rights. But the extent of a person's employment "property" is determined by state law. *Bishop v. Wood*, 426 U.S. 341, 344, 96 S.Ct. 2074, 2077, 48 L.Ed.2d 684 (1976).

■ In Texas the controlling authority, apparently, is *Hix v. Tuloso-Midway Independent School District*, 489 S.W.2d 706 (Tex.Civ.App.—Corpus Christi 1972, writ ref'd n. r. e.). That case held that several prior renewals of a teacher's contract coupled with an admission by a school official that it was district policy to retain employees who performed satisfactorily, did not establish a de facto tenure policy or a job property interest. The court held instead that employment rights were determined under the written policies of the district, and that state law (Tex.Rev.Civ.Stat.Ann. art. 2781, current version at Tex.Educ.Code Ann. § 23.28), in fact, prohibited any expectation of employment beyond the stated term of each written contract. *Id.* at 710. Other case law from Texas holds that oral representations to an employee by school officials not made in the course of official board actions are insufficient to overcome the mutual, objective expectancy established by written policies and employment contracts. *Moore v. Knowles*, 377 F.Supp. 302, 309 (N.D.Tex.1974) *aff'd*, 512 F.2d 72 (5th Cir. 1975); and *Doscher v. Seminole Common Consolidated School District Number One*, 377 F.Supp. 1166, 1171 (N.D.Tex. 1974).

Therefore, under state law Mr. Burris, like the plaintiff in *Perry v. Sinderman*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972), must rely principally upon the written policies of the school system. Since the Court found the scope and meaning of the various District policies to be clear and un-

ambiguous, it was unnecessary to consider past application and interpretation of the policies in the District. As a matter of law the only WISD policy which is relevant to the issue of renewal of a term contract is Policy DOAD (Px 39). That policy empowers the Board to vote not to renew the contract of a person in Plaintiff's position "if in its judgment the best interests of the District will be served." Such a judgment having been made in this case, it is inappropriate for a court of law to usurp the Board's authority.

Plaintiff argued the applicability of other school policies which tended to contradict the clear language of Policy DOAD which dealt with the specific question of contract non-renewal. Policy DAB (Px 46) established general criteria to be considered in undertaking any one of five specified personnel actions. Not surprisingly, in light of the earlier described policy, "renewal" was not specified. The only two terms listed in document DAB that could arguably apply to Burris' situation were "hiring" and "dismissal." But clearly the Board was not contemplating "hiring" Plaintiff when it took its vote on renewal. Burris was hired in 1978 and was an established employee by February, 1980. The common meaning of the word "dismissal" also did not encompass Plaintiff's situation. When a contractual employment relationship terminates by its own terms on a designated date, "dismissal" indicates termination *before* the agreed date. *Bowen v. Calallen Independent School District*, 603 S.W.2d 229, 234–35 (Tex.Civ.App.—Corpus Christi 1980, writ ref'd n. r. e.).

Plaintiff argued that Policy DGBA (Local)(Px 43) prohibited consideration by the Board of any information pertaining to a District employee unless that information came to the Board by way of the grievance procedures described in the Policy. The necessary implication of this argument is that the elected representatives of the people of WISD would be required to ignore significant information concerning their District unless they gained that information through attendance at grievance hearings.

The Court is convinced that this startling proposition is not based on a correct reading of the subject Policy. The last paragraph of DGBA (Local) as well as the entire document is directed to only two parties—the grievant and the School District. Contrary to Plaintiff's argument, the Policy does not address and is not intended to protect the interests of third parties who may be mentioned in a written grievance. The intent expressed in the last provision of the Policy is simply to establish an incentive for grievants to use the first and second levels of the procedure rather than overuse the third level, thus assuring the "purpose of this . . . procedure [which] is to secure at the first possible . . . level an equitable solution. . ." DGBA (Local) at 1.

Neither can Plaintiff invoke the grievance procedure to complain of the Board's decision not to renew his contract. If the Board has exercised "its judgment [of] the best interests of the District," then Plaintiff has not been wronged and he has no complaint. This local grievance procedure is analogous to the Texas Education Agency grievance procedure which is written as a policy without stated limitation but in fact can be invoked only if a preliminary showing is made by the grievant that a substantive wrong has been committed. *Ayotte v. Stockdale*, No. 78–R–46 (Comm'er Ed., Aug. 14, 1979), *see* Tex.Ed. Agency Rule § 23.10.-(1), codified at Tex.Admin.Code § 61.-231(a)–(b)(1). (Texas courts give weight to an agency's interpretation of its own regulations. *See Lloyd A. Fry Roofing Co. v. Texas*, 541 S.W.2d 639, 644 (Tex.Civ.App.—Dallas 1976, writ ref'd n. r. e.)). In both the state and the WISD procedures when a person has no employment property until the Board votes to grant him property for a succeeding year, he is not entitled to a hearing concerning the "loss" of that substantive "property" since he did not have anything to lose at the time the vote was taken.

### Liberty Interest

 Plaintiff alleged that the Board's consideration of defamatory information (the "Parker File") at a closed meeting and Defendant Alston's reading of a false letter at an open Board meeting deprived him of liberty in violation of the fourteenth amendment. The Court has concluded, however, that consideration of even false information in a closed meeting does not constitute publication such that the liberty of the individual is impinged. *Bishop v. Wood, supra*, 426 U.S. at 348–49, 96 S.Ct. at 2079. There was no evidence that Defendants released the "Parker File" to anyone who was not a member of the Board of Trustees. It seems clear that 42 U.S.C. § 1983 was not intended to create liability under these circumstances. A contrary rule would destroy the ability of a governmental entity to investigate in any manner any derogatory reports concerning its employees.

 Alston's reading of the letter (Px 8) from agricultural teachers Reese and Yancey is not actionable under section 1983 because the letter does not contain any falsehoods. *Codd v. Velger*, 429 U.S. 624, 97 S.Ct. 882, 51 L.Ed.2d 92 (1977). Nothing stated in Plaintiff's Exhibits 33, 34, or 55, or at trial contradicts the desires expressed by Reese and Yancey in their letter. Under these facts Plaintiff failed to show that any meeting room statement made by Alston was false since she simply identified the inconsistency between the position expressed by Reese and Yancey in their letter and the representations made by the Plaintiff at the April 15, 1980, Board meeting. This inconsistency did exist and was exhibited again at trial when Burris and Yancey testified to different understandings of their agreement concerning which agricultural courses were to have been taught during the 1980–81 academic year.

### First Amendment

Plaintiff alleged that his nonrenewal violated his first amendment rights because the action was taken due to his "association" with certain individuals and his submission of a letter (Px 55) to the Board, *i.e.*, he exercised his right of free speech. To prevail on these claims Plaintiff must first show that his conduct was constitutionally

protected. *Mount Healthy Board of Education v. Doyle*, 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977).

 The constitutionally protected associational interest alleged by Plaintiff consisted of his relationship with the Superintendent and the old-line members of the Board, and his lack of a congenial relationship with the new-line Board members and Ms. Ruth Castleschouldt, an influential person in the community. Plaintiff's Trial Brief at 5. At trial Plaintiff was unable to show any relationship between himself and others except association in its simplest form—friendship. There was no showing of combination for any political purpose, or for the furtherance of any particular school program, policy or objective. The Supreme Court has found constitutional protection for an employee whose discharge is motivated solely by his membership in a political party, *see Branti v. Finkel*, 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980). But this Court is convinced that the Constitution will not be interpreted to protect mere personal affinity in cases where the association bears no relationship to the expression of beliefs or ideas. *Cf. NAACP v. Alabama*, 357 U.S. 449, 460, 78 S.Ct. 1163, 1170, 2 L.Ed.2d 1488 (1958). Protection of simple friendship would unreasonably and pervasively limit the exercise of legitimate governmental prerogative. "Association" in this sense certainly does not invoke an interest which lies close to the core of the first amendment.

 The right of free speech, conversely, is, of course, constitutionally protected. But under *Boeing Co. v. Shipman, supra*, reasonable jurors could only have agreed that the Board would have made the same decision with respect to Mr. Burris' contract, regardless of his submission of his letter (Px 55). If the same decision would have been reached even in the absence of the protected conduct, or if the conduct was not a substantial or motivating factor in the decision, then there was no violation of the first amendment. *Mount Healthy Board of Education v. Doyle, supra*, 429 U.S. at 287, 97 S.Ct. at 576.

Defendant Alston voted at two annual meetings (1979 and 1980), and Ozment and Reeves each voted at one meeting (January, 1980) against the renewal of Plaintiff's contract before he submitted his letter on April 19, 1980. These voting records establish the claims made by Defendants at trial that they decided on non-renewal well before receiving the protected document.

Defendant Atkinson also would have voted the way he did regardless of Plaintiff's exercise of his right of free speech. *See Hillis v. Stephen F. Austin State University*, 665 F.2d 547 (5th Cir. 1982). Atkinson was unhappy with Plaintiff's minimal visibility in the community and the resulting lack of interest of the community in the activities of the Vocational Department. Specifically, no buyer could be found for a cow that had been raised by one of the agriculture students. Although not interested in the purchase of large quantities of beef, Atkinson personally bought the cow to aid the non-sustaining agriculture program. Plaintiff also failed to reserve a room at a packinghouse so that the students' animals might be slaughtered after exhibition at a local fair. The most important factor in Atkinson's decision, however, was the withdrawal by Edgar Straughter of support for the renewal of Plaintiff's contract at the April 19, 1980, meeting, and the less than wholehearted endorsement of the Plaintiff by the Superintendent at the same meeting.

Plaintiff similarly failed to meet his *Mount Healthy* burden with respect to Defendant Lee. No evidence was presented that Lee even saw the subject letter before the critical vote was taken. Since four trustees constituted a binding majority at WISD Board meetings, clearly reasonable jurors could not have found by a preponderance of evidence that "but for" presentation of his letter Plaintiff would have kept his job.

*Freedom From Punishment*

 Burris claimed that the failure to retain him constituted punishment without personal guilt and violated a "fundamental constitutional mandate of fairness."

Plaintiff's argument fails, however, for several reasons. Refusal to renew an employee's contract is not punishment. "[P]ublic employment is not a constitutional right" unless it is denied because of a discriminatory or otherwise impermissible reason. *Personnel Administrator v. Feeney*, 442 U.S. 256, 273, 99 S.Ct. 2282, 2293, 60 L.Ed.2d 870 (1979). Plaintiff failed to prove a violation of any provision of the Constitution. His punishment argument is subsumed by his earlier first and fourteenth amendment claims.

The cases cited in Plaintiff's brief involve either a suspect classification, or a violation of a fundamental right. Possession of a job is not a fundamental right at least when the worker has no property interest in continued employment. Plaintiff was employed at the will of his employer for a one year term and could have been non-renewed for good cause, or any cause not in violation of the Constitution. This case is not one of first impression, but on the contrary is governed by the following statement of the Supreme Court:

> "The federal court is not the appropriate forum in which to review the multitude of personnel decisions that are made daily by public agencies. We must accept the harsh fact that numerous individual mistakes are inevitable in the day to day administration of our affairs. The United States Constitution cannot feasibly be construed to require federal judicial review for every such error. In the absence of any claim that the public employer was motivated by a desire to curtail or to penalize the exercise of an employee's constitutionally protected rights, we must presume that official action was regular and, if erroneous, can best be corrected in other ways. The Due Process Clause of the Fourteenth Amendment is not a guarantee against incorrect or ill-advised personnel decisions." *Bishop v. Wood, supra,* 426 U.S. at 349–50, 96 S.Ct. at 2079.

Accordingly, this action is DISMISSED on the merits.