Gary O. GARDNER, Appellant,

v.

Jeannett HERRING, in her Official and Personal Capacities, Appellee.

No. 07–99–0297–CV.

Court of Appeals of Texas, Amarillo.

June 28, 2000.

Rehearing Overruled July 27, 2000.

Gary O. Gardner, Tulia, pro se.

Underwood, Wilson, Berry, Stein & Johnson, P.C., Patrick B. Mosley, R. Christopher Wright, Ararillo, for appellee.

Before BOYD, C.J., QUINN and JOHNSON, JJ.

BRIAN QUINN, Justice.

Gary O. Gardner (Gardner) appeals from a final summary judgment denying him relief against Jeannett Herring (Herring) and awarding the latter $23,000 "as reasonable attorneys fees" against Gardner for "acting on behalf of the Tulia Independent School District, the real party in interest." In one general point, Gardner argues that the court erred "in granting Herring's motion for summary judgment."[1] For the reasons that follow, we affirm in part and reverse in part.

### Background

Gardner, a trustee on the Tulia Independent School District's Board of Trustees (the Board), sued Herring in both her personal capacity and her official capacity as the president of the Board. The causes of action alleged involved purported violations of the Texas Open Meetings Act (the Act).[2] The purported violations concerned

---

1. Though Gardner also moved for summary judgment, which motion the trial court denied, he did not assert any issues on appeal disputing the propriety of the court's decision. Thus, our review is limited to considering whether the trial court erred in granting Herring's motion. Moreover, of the numerous complaints Gardner alleged in his lawsuit and which were denied via summary judgment, not all were raised on appeal or supported through argument as required by Texas Rule of Appellate Procedure 38.1(g) and (h). We review only those raised on appeal and accompanied by argument.

2. TEX. GOV.CODE ANN. § 551.001 et. seq (Vernon 1994).

meetings occurring on January 9, 1997, April 14, 1998, May 5, 1998, and July 7, 1998.

After joining issue and asserting a counterclaim for damages due to the purported frivolous nature of the suit, Herring moved for summary judgment. So too did Gardner request summary judgment, however, Gardner's motion was denied while Herring's was granted. Furthermore, in entering judgment, the trial court awarded Herring (apparently in her official capacity given the wording of the mandate) $23,000 as attorneys fees. Gardner then appealed.

### Standard of Review

The standard by which we review summary judgments is well-known and need not be repeated. Instead, we simply refer the parties to *Science Spectrum, Inc. v. Martinez,* 941 S.W.2d 910 (Tex.1997) and *Nixon v. Mr. Property Management Co. Inc.,* 690 S.W.2d 546 (Tex.1985) (involving the standard generally applicable to summary judgments).

### Application of Standard

1. *May 5, 1998 Meeting*

Gardner contended via his amended petition that [Herring] "met with a Quorum of Trustees after the special board meeting of May 5, 1998 had adjourned, and discussed school business, a violation of Texas Gov.Code 551." Herring thought herself entitled to summary judgment on this particular claim because the evidence allegedly established that no official school business was discussed at the time. Instead, the Board members present were simply informed of Gardner's initial suit against her in her individual, as opposed to official, capacity. This verbal exchange, according to Herring, did not constitute deliberation for purposes of the Open Meetings Act.

The evidence of record indicated that 1) immediately after a scheduled trustee

meeting, Herring disclosed to the Board that Gardner sued her, 2) Gardner had left the room when this disclosure was made, 3) the Board members "expressed regret" over the circumstance, 4) Herring and the other Board members remained in the meeting room for twenty minutes after Gardner left, 5) Herring had been sued only in her individual capacity at the time, and 6) Gardner admitted to having "little evidence" or "slim evidence" to prove that anything else was said or done with regard to the topic.[3] Yet, other evidence depicted that the relief sought by Gardner potentially affected more than Herring herself. The requested relief was that the trial court not only declare that Herring's actions "in chairing and participating" in certain meetings were unlawful but also to declare "[V]oid any actions [of the Board] taken in open session as a result of debate in improper executive sessions." From these demands, we see that the suit had the potential of directly affecting the acts of the district even though it was purportedly against Herring in her individual capacity. And, with this evidence in mind, we turn to both statute and judicial opinion to decide if Herring established that she was entitled to summary judgment as a matter of law.

The Texas Supreme Court demands "exact and literal compliance with the terms of" the Texas Open Meetings Act. *Acker v. Texas Water Com'n,* 790 S.W.2d 299, 300 (Tex.1990). Those terms dictate that "[e]very regular, special or called *meeting* of a governmental body shall be open to the public, except as provided by [Title 5, Chapter 551, Subtitle A, of the Government Code]." (emphasis added). Furthermore, the word "meeting" has been legislatively defined as:

> a *deliberation* between a quorum of a governmental body, or between a quorum of a governmental body and another person, during which public business

---

**3.** Gardner later amended his petition to sue Herring in her official capacity as well as in her individual capacity. Nonetheless, it is undisputed that Herring had only been sued in her individual capacity when the May 5th discussion occurred.

or public policy over which the governmental body has supervision or control is discussed or considered or during which the governmental body takes formal action.

TEX. GOV.CODE ANN. § 551.001(4) (emphasis added).[4] Next, the word "deliberation" has been defined as "a *verbal exchange* during a meeting . . . concerning an issue within the jurisdiction of the governmental body or any public business." *Id.* at § 551.001(2) (emphasis added). In other words, whether a meeting occurred is dependent upon the existence of a verbal exchange between a quorum of the governmental body regarding public business or matter within its jurisdiction. *Dallas Morning News Co. v. Board of Trustees,* 861 S.W.2d 532, 537 (Tex.App.—Dallas 1993, writ denied). And, while the legislature failed to define the phrase "verbal exchange", the term has nonetheless received judicial construction. For instance, the panel in *Dallas Morning News* interpreted the phrase as a "reciprocal giving and receiving of spoken words." *Id.* at 537. So, under the pre–1999 Act, a meeting occurred when there was a "giving and receiving of spoken words" about a matter of public business or within the body's jurisdiction.

■ Next, in applying the foregoing standard to the evidence of record, we conclude that Herring failed to establish her right to judgment as a matter of law.

This is so because precedent requires us to view and construe the evidence of record (and all reasonable inferences therefrom) in a manner most favorable to the non-movant, that is, Gardner. *Nixon v. Mr. Property,* 690 S.W.2d at 548–49. Furthermore, some evidence illustrates that a quorum of the Board congregated after a formal meeting to talk for about twenty minutes. During this period, Herring revealed to the quorum the existence of a lawsuit through which Gardner sought to negate official acts of the school district. Additionally, one or more members of the Board responded to the disclosure and, in responding, uttered that the circumstance was regrettable. Whether the member was suggesting that Herring's being sued was regrettable or that the suit in general was regrettable or that the suit's potential impact upon the school district was regrettable is unclear. Nevertheless, given the time period which lapsed, the subject of the disclosure by Herring to a quorum of the Board, the potential affect of the suit upon the district's official acts, and the fact that some reply to the disclosure was made by a Board member, one could reasonably, though not necessarily, infer that a "giving and receiving of spoken words" (or verbal exchange) about a matter of public business or within the district's jurisdiction had occurred.[5] And, because such an inference could be made, we cannot say that Herring proved as a matter of law that no deliberation or meeting hap-

**4.** The legislature modified the definition in 1999 to include a "gathering" of a quorum of the body at which the members receive information from, give information to, or ask questions of or receive questions from any third person regarding matter of public business or public policy over which the body has supervision or control. TEX. GOVT CODE ANN. § 551.001(4)(B) (Vernon's Supp.2000). However, the alteration lacked retroactive effect. Act of August 30, 1999, 76th Leg., R.S., ch. 647, § 1, 1999 TEX. SESS. LAW SERV. 3218 (Vernon) (codified as an amendment to TEX. GOVT CODE ANN. § 551.001(4)). So, because the meetings at bar occurred in 1997 and 1998, the definition that controls resolution of this appeal is that which we cite in the body of this opinion.

**5.** We say that the inference is not necessary because a fact-finder could interpret the evidence differently. That is within its prerogative. We, however, do not have the prerogative to do so given the standard of review. In effect, our duty at bar is to simply determine whether the record contains evidence which could reasonably be construed as negating or contradicting Herring's evidentiary proposition, *i.e.* that no deliberation occurred. And, if such evidence exists, then it cannot be said that the proposition was established as a matter of law even though the ultimate fact-finder may eventually side with Herring.

pened on May 5th after the Board concluded its regular meeting. While this may be an exacting and literal application of the Open Meetings Act and its definitions to the evidence at bar, same is required of us by the Texas Supreme Court even though we may not favor it. *Acker v. Texas Water Com'n,* 790 S.W.2d at 300.

### 2. *July 7, 1998 Meeting—Failure to Provide Adequate Notice*

■ Next, Gardner contended that a fact question existed concerning whether proper notice of a topic to be discussed at the July 7, 1998 meeting was given as required by the Open Meetings Act. *See* TEX. GOV.CODE ANN. § 551.041 (stating that a governmental body shall give written notice of the date, hour, place, and subject of each meeting held by the governmental body); *Cox Enterprises, Inc. v. Board of Trustees,* 706 S.W.2d 956, 959–60 (Tex. 1986) (holding that the Open Meetings Act requires full disclosure of the subject matter of the meetings). The topic complained of involved an amendment to the Athletic Code of Ethics. According to Gardner, it was not included on the agenda or the notice posted by the district's superintendent which informs the public of the subjects to be discussed at the upcoming meetings. In response, Herring presented evidence illustrating that 1) notice of subjects to be addressed was afforded through posting of the meeting's agenda, 2) the topic in question was not originally included on the agenda for the July meeting when originally posted, and 3) the district's superintendent removed the agenda, added reference to the Athletic Code of Ethics, and returned the amended document to its original locale at a time comporting with the Open Meetings Act.[6] This evidence allegedly entitled Herring to summary judgment as a matter of law. We disagree.

In the arena of summary judgment, evidence favoring the movant's position will not be considered unless uncontroverted. *Putthoff v. Ancrum,* 934 S.W.2d 164, 167–68 (Tex.App.—Fort Worth 1996, writ denied). Thus, our task consists of perusing the record to determine whether the attestations of the district's superintendent were uncontroverted as Herring suggests. And, in doing so, we find evidence indicating that 1) the local district policy required a copy of the agenda to be sent to the Board members, 2) the copy sent omitted reference to the Athletic Code of Ethics, 3) district policy "require[d] the superintendent to check with the [Board] president to insure that the agenda and topics [met] with the [p]residents [sic] approval," 4) the Board president herself knew nothing of the purported addition until she arrived at the meeting and found "a paper" at each seat "that had the item on it highlighted so that we would recognize that it was an extra item that was not in our mail packet," 5) a copy of the agenda was requested by Gardner from the assistant superintendent sometime after the meeting had transpired and before suit was filed, and 6) the copy Gardner received from the assistant superintendent contained *no reference* to an item "13A" or the Athletic Code of Ethics.

From the foregoing circumstantial evidence, one could reasonably, but not necessarily, infer that notice of the topic in question was not disclosed prior to the meeting. *See Guthrie v. Suiter,* 934 S.W.2d 820, 831 (Tex.App.—Houston [1st Dist.] 1996, no writ) (holding that circumstantial evidence may create a fact issue if, from the evidence, a reasonable person could conclude that the existence of the ultimate fact in dispute is more reasonable than its nonexistence). And, because one could so infer, the superintendent's attestations to the contrary are controverted and, consequently, beyond consideration on appeal. *See Putthoff v. Ancrum, supra.*

---

**6.** A copy of the altered agenda was also tendered in support of summary judgment. One can see via the difference in type that reference to the Athletic Code of Ethics was subsequently included therein as item "13A".

In sum, Herring failed to prove, as a matter of law, that the notice of the item was disclosed as mandated by the Act. This requires us to hold that the trial court erred in granting her summary judgment on the issue.

3. *April 14, 1998 Meeting—Teacher Appreciation Week and Teen Pregnancy*

Next, Gardner contended that, during the April 14, 1998 meeting, the Board of Trustees acted upon subjects omitted from the agenda. And, in doing so, it allegedly violated section 551.041 of the Act. The subjects in question concerned Teacher Appreciation Week and teen pregnancy. In response, Herring asserted that the topic regarding "Teacher Appreciation Week" involved personnel matter and the topic "personnel" was contained in the agenda. As to the subject of teen pregnancy, she asserted that the notice provisions of the Act did not apply because the exchange was simply an inquiry followed by a response or explanation of existing policy. With this background, we address each issue in turn.

a. *Teacher Appreciation Week*

 Generally, notice is adequate if it alerts or informs the public that some action will be taken on a particular topic. *Cox Enterprises, Inc. v. Board of Trustees*, 706 S.W.2d at 958; *Rettberg v. Texas Dept. of Health*, 873 S.W.2d 408, 411 (Tex.App.—Austin 1994, no writ). Furthermore, in disclosing that some action will be taken, the notice need not mention all possible results which may arise. *Id.* Yet, it is clear that a higher degree of specificity is needed when the subject to be debated is of special or significant interest to the public. *Markowski v. City of Marlin*, 940 S.W.2d 720, 725–26 (Tex.App.—Waco 1997, writ denied); *Point Isabel I.S.D. v. Hinojosa*, 797 S.W.2d 176, 180 (Tex.App.—Corpus Christi 1990, writ denied); *see Cox Enterprises, Inc. v. Board of Trustees*, 706 S.W.2d at 959–960 (utilizing this formula to determine if the notice afforded was sufficient). For instance, the selection of a school superintendent is of great interest to the public. So, to satisfy the notice requirement of the Act, the district must do more than merely use the word "personnel" to inform the public of its intent to address the matter. *Cox Enterprises, Inc. v. Board of Trustees*, 706 S.W.2d at 959–960. Conversely, the employment of staff in other positions, such as teachers, librarians, and counselors, has been held to be of lesser interest to the public, and, in those cases, disclosure of a board's intent to act on those matters through the statement "employment of personnel" has been deemed adequate. *Point Isabel I.S.D. v. Hinojosa*, 797 S.W.2d at 182. Yet, irrespective of whether the topic is of special or no interest, the Act still requires the governing body to make "full disclosure of the subject matter of the meetings." *Cox Enterprises, Inc. v. Board of Trustees*, 706 S.W.2d at 960.

At bar, the school district attempted to notify the public of the topics to be addressed at the April 14, 1998 Board meeting via posting of the meeting's agenda. Found at item twelve of the agenda was the topic "Consider Matters Related to Personnel: Resignations, Employment, Positions." Absent was any expressed reference to teacher appreciation. Thus, our task is to determine whether that notice sufficiently alerted the public to the possibility that "Teacher Appreciation Week" would be considered. For several reasons, we are unable to conclude that it did, as a matter of law.

First, allusion to "resignations, employment [and] positions" indicates that the personnel matters to be considered encompassed resignations, employment and the establishment or dissolution of various positions. That is, the situation is akin to that in which the doctrine of *ejusdem generis* would apply. The latter theory serves as an aid in interpreting the meaning of particular language in a document. Furthermore, it encompasses the basic and logical notion that one who lists specific things after referring to a general, unde-

fined category intends to restrict the scope of the category to the type of things contained in the list. *Dawkins v. Meyer*, 825 S.W.2d 444, 447 (Tex.1992). So, pursuant to this common sense rule, placing the descriptive words "resignations, employment [and] positions" after the phrase "consider matters related to personnel" indicated that the personnel matters to be addressed were restricted to such topics as resignations, the hiring, retention and firing of employees, and the creation or dissolution of employment positions.

Second, while some may argue that "Teacher Appreciation Week" is not a topic likely to garner much public interest, we cannot speculate on the matter. Simply put, whether a topic is of public interest is dependent upon the facts of each case. We are not prophets vested with the ability to know the public mind of any particular community. What may or may not be of import to us is not necessarily what is or is not of import to the public at large. And, this is one reason why questions like that before us are decided on a case by case basis. *Point Isabel I.S.D. v. Hinojosa*, 797 S.W.2d at 180 (stating that the appropriate process is a case by case comparison between the notice given and the action taken under the standards set by *Cox*). Moreover, because Herring moved for summary judgment and her motion was not in the nature of a "no evidence" summary judgment, she had the burden to present evidence negating the likelihood that the subject was of special public interest. This she did not do.

■ In sum, the state of the record prohibits us from holding, as a matter of law, that item twelve of the agenda constituted full disclosure as required by the Act. This is not to say that other evidence may exist which ultimately entitles Herring to judgment. We simply hold that the record before us does not prove, as a matter of law, that item twelve alerted the general public to the chance that the Board would address the subject of "Teacher Appreciation Week".

b. *Teen Pregnancy*

As to the topic of teen pregnancy, the record is also *sans* evidence illustrating whether it was a matter of special public interest, although we would hesitate to conclude that it was not. Moreover, nothing was said in the April 14th agenda about the subject.

■ Nevertheless, statute provides that:

If, at a meeting of a governmental body, a member of the public or of the governmental body inquires about a subject for which notice has not been given as required ... the notice provisions ... do not apply to:

(1) a statement of specific factual information given in response to the inquiry; or

(2) a recitation of existing policy in response to the inquiry.

TEX. GOV.CODE ANN. § 551.042(a)(1) & (2). Furthermore, summary judgment evidence illustrates that when the subject of teen pregnancies was broached by a Board member, responses were made. Those responses consisted of "giving information about the District's curriculum", "general comments about the pregnancy rate", and asking whether the Board member would care to have the matter placed on the agenda for the next Board meeting. And, while the minutes of the April 14th meeting stated that the issue was "discussed" nothing of record suggests that the discussion consisted of more than what we have mentioned. These circumstances illustrate nothing more than the type of exchange contemplated by section 551.042(a). There was a spontaneous inquiry coupled with recitation of factual information and district policy (*i.e.*, explanation of the district's curriculum). Consequently, the trial court correctly rejected Gardner's claim that the Act was violated in this instance.

4. *April 14th Meeting—Luis Hernandez*

Next, Gardner contended that the trial court erred in entering summary judgment upon his claim that Herring violated the

Act *viz-a-viz* the complaint of Luis Hernandez. Summary judgment evidence revealed that Hernandez was an employee of the school district who filed a discrimination complaint with the Board and requested that same be heard in an open or public meeting. Pursuant to the request, the Tulia School Board convened a public hearing on April 14, 1998 and Hernandez appeared with legal counsel. After both sides presented their evidence, Herring allegedly "ended that item of discussion and went to the next item of business on the agenda." Furthermore, Hernandez and his attorney left. Subsequently, Herring "called for an executive session" to address with legal counsel and the superintendent "what to do in regards to the ... complaint of ... Hernandez and cited 551.074 and 551.071 to do so." Because Gardner believed the action violated the Act, he left. Once the executive session culminated, the Board passed a motion directing its superintendent and legal counsel "to draft a response to the Luis Hernandez complaint stating the Board's position to be presented for approval at the next regularly scheduled meeting."

To rebut the proposition that the foregoing constituted violations of the Act, Herring asserted that 1) Hernandez did not object to the Board convening in executive session to discuss his complaint, 2) the closed session was convened to obtain legal advice from the Board's attorney, and 3) no final action was taken by the Board during that session. The trial court apparently agreed with one or more of the propositions since it granted summary judgment. Thus, we now address whether any of the propositions established Herring's entitlement to such a judgment as a matter of law.

▪ As to the want of an objection, authority does hold that when an employee requests a public hearing under section 551.074(b) of the Act, but a board nevertheless convenes in executive session, the employee must object to preserve his complaint. *Bowen v. Calallen I.S.D.,* 603 S.W.2d 229, 236 (Tex.Civ.App.—Corpus Christi 1980, writ ref'd n.r.e.). Yet, to the extent that *Bowen* constitutes authority, we construe it to apply to situations wherein the employee has the opportunity to object. Indeed, it would be quite specious to suggest that through silence one can waive a complaint regarding conduct about which he knew nothing or about which he was denied the opportunity to object. Furthermore, this observation does not lack support. For instance, in holding as it did, the *Bowen* court relied upon *Corpus Christi C.T.A. v. Corpus Christi I.S.D.,* 535 S.W.2d 429 (Tex.Civ.App.—Corpus Christi 1976, no writ), and in *Corpus Christi C.T.A.,* the complainant was present to voice objection, as the complainant apparently was in *Bowen.* Additionally, in other circumstances where silence has been deemed waiver, the rule has been applied only when objection is withheld after the need for same becomes apparent. *See Lagrone v. State,* 942 S.W.2d 602, 618 (Tex.Crim.App.1997) cert. denied 522 U.S. 917, 118 S.Ct. 305, 139 L.Ed.2d 235 (1997) (stating that one must object to preserve error "as soon as the ground for objection becomes apparent"). And, generally, it becomes apparent "as soon as the defense knows or should know that an error has occurred." *Hollins v. State,* 805 S.W.2d 475, 476 (Tex.Crim.App.1991). In other words, the complainant must have been in a position to perceive the error before his silence can be deemed waiver.

Here, summary judgment evidence depicts that the executive session was convened after 1) the Board heard Hernandez's complaint, 2) the Board moved on to other topics on its agenda, and 3) Hernandez left, thus, it could hardly be said that Hernandez knew or should have known of the decision to convene in executive session or had opportunity to object to same. Consequently, we reject the proposition that Hernandez's failure to object cleansed the Board's decision to convene in executive session of potential taint.

■ As to the desire to secure legal advice, statute does permit a governmental body to conduct a private consultation with its attorney in certain circumstances. Those circumstances, however, are limited to situations wherein the body seeks legal advice about pending or contemplated litigation or a settlement offer or wherein the attorney's duties under the Texas Disciplinary Rules of Professional Conduct clearly conflict with the Act. TEX. GOV.CODE ANN. 551.071(1) & (2). At bar, some evidence indicates that 1) the Board convened in executive session to "obtain legal advice pertaining to responsibilities and possible litigation that could arise from an employee in the uniformed services," 2) "no final action, decision or vote on any matter upon which the attorney advised the Board ... during that closed session" was taken, and 3) legal counsel "believed litigation on [the Hernandez complaint] was being contemplated against the District" and therefore, he needed to converse with the district in confidence. Yet, other evidence also illustrates that during the closed meeting "there was a lot of discussion and ideas placed out" regarding how to resolve Hernandez's complaint. Based upon these discussions, the superintendent and the attorney were directed to draft "something up to present to" the Board at the next meeting. In other words, one could infer from the totality of evidence that while the closed session may have been convened to obtain legal advice, the Board members also deliberated upon the substantive aspects of Hernandez's complaint. And, in doing so, one could further infer that the scope of section 551.071 was exceeded. *See Finlan v. City of Dallas,* 888 F.Supp. 779, 782 n. 9 (N.D.Tex.1995) (noting that while a government body may hold a closed meeting to seek legal advice from its attorney, discussion of subjects unrelated to legal matter is impermissible). Thus, the record fails to establish as a matter of law that the participants in the meeting merely sought and obtained legal advice as permitted by section 551.071(1) of the Act or that legal counsel merely advised the Board on matters within the ambit of section 551.071(2).

■ Simply put, a governmental body cannot invoke section 551.071 to convene a closed session and then discuss topics outside of section 551.071. *See Finlan v. City of Dallas, supra.* Moreover, the evidence at bar failed to prove, as a matter of law, that the school district did not do that here. So, we must reject Herring's invocation of section 551.071 as basis for summary judgment.

■ As to whether a final decision was made, that matters not. Statute requires "every regular, special, or called meeting" to be open to the public. TEX. GOV.CODE ANN. § 551.002. If a meeting is not so conducted (and assuming that all the exceptions permitting a closed meeting were inapplicable) then a violation of the statute arises, *Martinez v. State,* 879 S.W.2d 54, 56 (Tex.Crim.App.1994), irrespective of whether any final action is taken. So, assuming *arguendo* that those involved in the April 14th closed meeting eschewed all final action upon Hernandez's complaint, the Act may nonetheless have been violated. So, we also reject the current contention of Herring as basis for summary judgment.

5. *January 9, 1997 Meeting*

Next, Gardner contended that the trial court erred in granting summary judgment on his claim that provisions of the Act were violated during the Board's January 9, 1997 meeting. These violations allegedly occurred when the Board convened in executive session to discuss school district policies relating to employees who were also members of the uniformed services. According to Herring, no violation arose since the body convened pursuant to sections 551.071 and 551.074 of the Act, and she moved for summary judgment on that basis. The trial court undoubtedly agreed with her since it granted the motion. With this said, we now address

whether the trial court acted appropriately.

As previously mentioned, section 551.071 essentially permits a governmental body to meet in closed session with its attorney to obtain legal advice. While some summary judgment evidence illustrated that such was the purpose of the Board convening in closed session at bar, other indicates that the district's legal counsel refused to provide any advice. This was purportedly so because the legal questions being propounded were not initially submitted through the superintendent or Board president, as required by policy. Thereafter, the Board members proceeded to "discuss[ ] and deliberate[ ] ... [school district] policy concerning employees in the military service and whether it applied to our employees who were career officers ... and what the administration could and could not do against them concerning there [sic] employment at" the school district. From this amalgam of evidence, one could reasonably, though not necessarily, infer that more happened than simply obtaining legal advice from counsel. Consequently, Herring failed to establish, as a matter of law, that the circumstances fell within the scope of section 551.071 of the Act.

As for section 551.074 of the Act, that provision speaks of deliberation regarding "the appointment, employment, evaluation, reassignment, duties, discipline, or dismissal of a public officer or employee" or entertaining "a complaint or charge against an officer or employee." TEX. GOV. CODE ANN. § 551.074(a)(1) & (2). Furthermore, the statute has been construed as referring to particular employees or individuals as opposed to employees in general. That is, it permits a governing body to deliberate behind closed doors when it is addressing the appointment, employment, complaint, *etcetera*, of a particular person. Op. Tex. Att'y Gen. No. H–496 (1975) (involving the predecessor to section 551.074). Discussion about policy and its application

to employees in general or a class of unnamed employees is not authorized. *Id.*

Given the interests involved in section 551.074, we conclude that opinion H–496 accurately sets the parameters of the statute. This is so because matters involving particular employees often implicate private, confidential, or embarrassing issues. Thus, the state would have an interest in avoiding the needless public disclosure of such matters. Yet, the same cannot be said of a generic reference to school district employees and officers. In such cases, there is less chance of embarrassment being foisted upon particular individuals or of attributing private matters to particular individuals. So, discussing policy and the like as it relates to a generic group of employees or officers reasonably falls outside the interests sought to be protected in section 551.074 and, therefore, should be addressed publicly.

Here, summary judgment evidence indicated that some discussion during the closed session involved Luis Hernandez. Yet, other evidence illustrated that the discussion concerned district policy relating to employees falling within a generic class. While the former may have properly been the subject of a closed meeting, we cannot say that the latter was, considering opinion H–496. In short, Herring failed to prove as a matter of law that only the subjects found within the ambit of section 551.074 were broached during the January 9th executive session.

### 6. *Frivolous Complaint*

Lastly, Gardner contended that his complaint was not frivolous. Given that Herring failed to prove her entitlement to summary judgment upon all causes of action asserted by Gardner (as addressed above), we must agree with Gardner at this time. Therefore, ordering him to pay attorney's fees was impermissible.

For the reasons stated above, we reverse that portion of the summary judgment that denied relief upon Gardner's

claims involving the January 9, 1997 meeting, the April 14, 1998 meeting (save that relating to the "teen pregnancy" issue), the May 5, 1998 meeting, and the July 7, 1998 meeting, as well as that which awarded $23,000 in attorney's fees against Gardner, and remand that portion of the cause for further proceedings. In all other things, summary judgment is affirmed. Finally, in reversing the judgment in part, we make no comment upon the merits of Gardner's complaints or the validity of Herring's defenses thereto. We simply hold that a portion of the summary judgment was improper given the record before us.