ACCEPTED
14-14-01005-CV
FOURTEENTH COURT OF APPEAL
HOUSTON, TEXAS
1/9/2015 6:10:53 PM
CHRISTOPHER PRIN
CLERK

No. 14-14-01005-CV

In the Fourteenth Court of Appeals
Houston, Texas

FILED IN
14th COURT OF APPEALS
HOUSTON, TEXAS
1/9/2015 6:10:53 PM
CHRISTOPHER A. PRINE
Clerk

CITY OF GALVESTON,
Relator

vs.

INDIAN BEACH PROPERTY OWNERS' ASSOCIATION, INC.,
Real Party in Interest

Original Proceeding on Petition for Writ of Mandamus
from the 122nd Judicial District Court
Galveston County, Texas

RESPONSE TO PETITION FOR WRIT OF MANDAMUS

Angie Olalde
State Bar No. 24049015
Andrew J. Mytelka
State Bar No. 14767700
Stephen G. Schulz
State Bar No. 17848300
GREER, HERZ & ADAMS, L.L.P.
2525 South Shore Blvd., Ste. 203
League City, Texas 77573
(409) 797-3200 (Telephone)
(866) 422-4406 (Facsimile)

COUNSEL FOR REAL PARTY-IN INTEREST
INDIAN BEACH PROPERTY OWNERS' ASSOCIATION, INC.

# IDENTITY OF PARTIES AND COUNSEL

**Relator**

City of Galveston

*Relators' Trial and Appellate Counsel*

John J. Hightower
Scott Bounds
OLSON & OLSON, L.L.P.
Wortham Tower, Suite 600
2727 Allen Parkway
Houston, Texas 77019-2133

**Respondent**

Hon. John Ellisor
122nd Judicial District Court
Galveston County, Texas
600 59th Street, Room 4304
Galveston, Texas 77551
(409) 766-2275

**Real Party in Interest**

Indian Beach Property Owners'
Association, Inc.

*Lead Counsel on Appeal*

Angie Olalde
State Bar No. 24049015
Greer, Herz & Adams, L.L.P.
2525 South Shore Blvd., Suite 203
League City, Texas 77573

*Trial Counsel for Real Parties in Interest*

Andrew J. Mytelka
State Bar No. 14767700
Stephen G. Schulz
State Bar No. 17848300
One Moody Plaza, 18th Floor
Galveston, Texas 77550

**Additional Party**

Judy Shorman

*Counsel for Judy Shorman*

Robert Shattuck, Jr.
1018 23rd Street
Galveston, Texas 77550

# TABLE OF CONTENTS

Statement of the Case.............................................................................. vii

Issues Restated ........................................................................................ vii

Statement of Facts .....................................................................................1

Summary of the Argument...........................................................................6

Argument....................................................................................................8

    A.     Standard of Review and Applicable Law..............................................8

          1.    Standard of Review in Mandamus Proceedings...........................8

          2.    The Texas Open Meetings Act .....................................................9

          3.    The City bears the burden of establishing privilege or
              a TOMA exception ...................................................................11

    B.     Response to the City's discussion on Indian Beach's allegations .....12

    C.     The trial court's factual determination was not arbitrary or
        unreasonable................................................................................12

          1.    Procedures taken before or after a closed session cannot
              cure TOMA violations that occur *during* a closed session ........12

          2.    TOMA's legal advice exception is narrow, and any
              discussion straying from legal advice is improper,
              and illegal................................................................................15

          3.    The trial court's order determined facts that cannot be
              challenged on mandamus ...........................................................19

          4.    The City's characterizations of the records contents
              should not be considered ...........................................................23

D.    Extraneous recordings are not sought ..................................................25

E.    If the counsel strayed from its posted agenda topic, it violated
       TOMA's notice requirements...........................................................25

Conclusion and Prayer .......................................................................................28

# INDEX OF AUTHORITIES

*Cases*

*Acker v. Tex. Water Comm'n,*
   790 S.W.2d 299 (Tex. 1990) ...................................................................... passim

*Bd. of Adjustment of City of Univ. Park, Tex. v. Legacy Hillcrest Inv., L.P.*,
   No. 05-13-1128-CV, 2014 WL 6871403
(Tex. App.—Dallas 2014, no pet. h.)....................................................................15

*City of Farmers Branch, et.al vs. Ramos,*
   235 S.W.3d 462 (Tex. App.—Dallas 2007, no pet.) .................................. 9,11,25

*City of Prescott v. Town of Chino Valley,*
   803 P.2d 891 (Ariz. 1990) ...................................................................................17

*City of San Antonio v. Fourth Court of Appeals,*
   820 S.W.2d 762 (Tex. 1991) ........................................................................ 10,16

*Cox Enter., Inc. v. Bd. of Trustees,*
   706 S.W.2d 956 (Tex. 1986) ..................................................................... passim

*Davis v. Huey,*
   571 S.W.2d 859 (Tex. 1978) ................................................................................9

*Diocese of Galveston-Houston v. Stone,*
   892 S.W.2d 169 (Tex.App—Houston [14th Dist.] 2011, orig. proceeding).........22

*Fairchild v. Lib. Indep. Sch. Dist.,*
   466 F. Supp.2d 817 (E.D. Tex. 2006) .................................................................11

*Finlan v. City of Dallas,*
   888 F. Supp. 779 (N.D. Tex. 1995) ......................................................... 13,15,18

*GAF Corp. v. Caldwell,*
   839 S.W.2d 149(Tex. App.—Houston [14th Dist.] 1992, orig. proceeding)....9,22

*Gardner v. Herring*,
   21 S.W.3d 767 (Tex. App.—Amarillo 2000, no pet.).................................. passim

*Huie v. DeShazo*,
   922 S.W.2d 920 (Tex. 1996) ....................................................................16

*In re Carbo Ceramics Inc.*,
   81 S.W.3d 369 (Tex. App.—Houston [14th Dist.] 2002, orig. proceeding)........23

*In re E.I. DuPont de Nemours and Co.*,
   130 S.W.3d 218 (Tex. 2004) ....................................................................11

*In re EPIC Holdings, Inc.*,
   985 S.W.2d 41 (Tex. 1998) ........................................................................8

*In re Ford Motor Co.*,
   165 S.W .3d 315 (Tex. 2005) ......................................................................8

*In Re Geico Gen. Ins. Co.*,
   No. 14-06-00423-CV, 2006 WL 3511694 (Tex. App.—Houston
   [14th Dist.] Dec. 7, 2006, ......................................................................25

*In re La. Tex. Healthcare Mgmt., L.L.C.*,
   349 S.W.3d 688 (Tex. App.—Houston [14th Dist.] 2011, orig. proceeding)......22

*Killam Ranch Properties, Ltd. v. Webb County*,
   376 S.W.3d 146 (Tex. App.—San Antonio 2012, pet. denied) ..........................22

*Markowski v. City of Marlin*,
   940 S.W.2d 720 (Tex. App.—Waco 1997, writ denied)................................ 10,24

*Olympic Waste Servs. v. City of Grand Saline*,
   204 S.W.3d 496 (Tex. App.—Tyler 2000, no pet.)................................. 11,12,15

*People v. Whitney*,
   578 N.W.2d 329 (Mich. App. 1998) ..............................................................17

*Tex. State Bd. of Pub. Accountancy v. Bass*,
   366 S.W.3d 751 (Tex. App.—Austin 2012, no pet.)...........................................17

*Underwood v. City of Presque Isle*,
715 A.2d 148 (Me. 1998) ..................................................................17

*Walker v. Packer*,
827 S.W.2d 833 (Tex. 1992) ............................................... 8, 9, 22, 23


*Statutes*
Tex. Gov't Code § 551.002 (Vernon 2012) ............................................9

Tex. Gov't Code § 551.041 ................................................................25

Tex. Gov't Code § 551.071 (Vernon 2012) ...................................... 10,26


*Miscellaneous*
Tex. Atty. Gen. Op. DM-98 (1992) .....................................................27

Tex. Atty. Gen. Op. JC-0057 (1999) ...................................................27

Tex. Atty. Gen. Op. JC-0233 (2000) ............................................... 15,17

Tex. Atty. Gen. Op. JM-100 (1983) ................................................ 15,18

Tex. Atty. Gen. Op. MW-0578 (1982) .................................................10

Tex. Atty. Gen. Op. No. JC-0506 (2002) ..............................................11

Tex. Atty. Gen. Op. No. 96-058 .........................................................11

# STATEMENT OF THE CASE

*Nature of the underlying proceeding*

The underlying case raises Texas Open Meetings Act ("TOMA") violations and requests for declaratory and injunctive relief based upon actions taken by the City of Galveston's city council in a closed, executive session on February 23, 2012. Rec. tab 10 ¶¶7-8 pp.153-54.[1]

*Respondent*

Hon. John Ellisor
122nd Judicial District Court, Galveston County

*Trial court proceedings at issue*

Indian Beach Property Owners Association, Inc. ("Indian Beach") filed a motion asking the trial court to conduct an in camera inspection of the executive session recording, which the City opposed. Supp. Rec. tabs 1-2.[2] The trial court granted the request. Rec. tab 8. The City of Galveston submitted the closed session recording (Rec. tab 9), and later filed a motion for summary judgment seeking to dismiss Indian Beach's TOMA claim. Rec. tab 3. The trial court denied the City's summary judgment motion. Rec. tab 18.

The trial court issued a separate order finding the city council exceeded TOMA's limited statutory scope for executive sessions, and ordered the City to produce the recording of the executive session. Rec. tab 1.

*Action from which Relator seeks relief*

The City challenges the trial court's finding that the city council exceeded TOMA's narrow legal advice exception, and its order to produce the closed session recording.

---

[1] Citations are to the record on appeal filed by the City, and are formatted as: Rec. tab # [pinpoint page or paragraph]. Pinpoint page numbers are to the digital PDF page number.

[2] Indian Beach files with this brief a short supplemental record containing the motion for in camera inspection and the City's response.

# ISSUE RESTATED

The trial court did not abuse its discretion when it reviewed the pleadings and evidence and found the city council exceeded the narrow scope of the Texas Open Meetings Act's exception allowing closed sessions to obtain legal advice; nor did the trial court abuse its discretion by ordering the City to produce the taped recording of the actions exceeding the open meetings exception for the Shorman matter.

**STATEMENT OF FACTS**

The underlying dispute arises from Judy Shorman's permit application to approve a general land use plan ("GLUP") to allow her to build and operate a dog kennel at her home. Rec. tab 10 ¶8 p.153. The crux of the original dispute was the location of the kennel, as Shorman's home is a lone tract in the middle of the Indian Beach Subdivision, though it is not included within that subdivision's plat. *Id.*; Rec. tab 20 doc. 16-1 p.542 (map); Rec. tab 3 exh.2 p.33 (referencing Ms. Shorman's property as "a parcel of land that is within the Indian Beach homeowners area.").

Indian Beach Property Owners' Association, Inc. ("Indian Beach") objected to Shorman's GLUP application. Rec. tab 14 pp.201, 220-222 (verbatim minutes from two Planning Commission meetings). After two public hearings, Galveston's Planning Commission denied Shorman's application on January 24, 2012. Rec. tab 14 p.226; Rec. tab. 3 exh. 1 p.25. Under Galveston's city ordinances, the Planning Commission had "the power to make final determination on General Land Use Plans." Galv. City Ordinance Nos. 93-33, 98-52, 08-021 (attached in Appendix A).[3]

Ms. Shorman appealed the denial to Galveston's city council under City

---

[3] Ordinance No. 93-33 is codified as a part of Section 29-40 of the City of Galveston Zoning Standards (1991) (Appendix A). Proposed uses, such as for a dog kennel, must be based upon a GLUP approved by the Planning Commission. Ord. Sec. 29-40(b) (Appendix A). Any "proposed use" in a GLUP is subject to the Planning Commission's review and approval.

ordinance 98-16. Rec. tab 20 doc. 16-1 p.532. The appeal was placed on the council's February 23, 2012 workshop and regular council agendas. Rec. tab 3 exh. 1 p.25 & exh. 4 p.57.

Legal opinions provided by Galveston's city attorney show the city's established policy was to review Planning Commission decisions on GLUP applications for abuse of discretion. Rec. tab 14 pp.229-36 (Planning Commission's decision should be upheld if it is not arbitrary or capricious; that is, if there is some evidence supporting the decision); *see also* Rec. tab 14 pp.238-39 ("After further review, it remains our opinion that the standard of review is abuse of discretion."). This policy coincides with city ordinances giving discretion to the Planning Commission in reviewing GLUP applications. *See* Galv. City Ord. 93-33 (Appendix A). It is also consistent with common sense, because if the Planning Commission had no discretion to deny a GLUP application for the permitted use. There would be no need to require a public hearing before the Planning Commission; rather, approval could be left to staff action.

The council reviewed its agenda at its morning workshop on February 23, 2012. Rec. tab 3 exh. 2 pp.31-53.[4] At the workshop, one council member asked whether the Planning Commission could deny the GLUP application, since a dog

---

[4] The City submitted three DVDs containing a video recording of the workshop meeting only. The City's 4:00 p.m. regular council meeting is available at http://galvestontx.swagit.com/play/02212013-677 (*see* Rec. tab 4 ¶14 p.7), and the minutes from the 4:00 p.m. regular meeting are at Rec. tab 3 exh. 5 pp.64-72.

kennel was listed as a "permitted use."[5] Rec. tab 3 exh. 2 pp.40-41. The council member's question included a caveat that if the GLUP included a permitted use and there were no objections to the GLUP, could the Planning Commission deny the application. *Id.* She then stated that the City's written legal opinion actually answers her question. *Id.* (referencing legal opinions available at Rec. tab 14 pp.229-39). In Ms. Shorman's case though, there *were* objections to the GLUP. Rec. tab 14 pp.195-226. The council member also asked about the treatment of specific use permits. Rec. tab 3 exh. 2 p.41. While the City gave discretion to the Planning Commission for GLUP applications, council retained authority to review actions taken on specific use permits. *See* Rec. tab 3 exh. 3 p.41 (referencing specific use permits that council has total discretion to approve or deny).

The City Attorney Dottie Palumbo responded to these questions, stating she could provide factual information, but "really can't answer the legal question out in the open." Rec. tab 3 exh.2 p.41. She explained that one of the conditions for GLUP approval is whether the proposed usage is compatible with adjacent uses.

---

[5] A permitted use is a potential way in which an owner can develop property. The long list of permitted uses for Ms. Shorman's property include constructing and operating a mortuary, electrical substation, convenience store, or even an outdoor amusement park. Rec. tab 3 exh. 5 p.244. For obvious reasons, the city's Planning Commission has the power to deny GLUP applications where the use is not compatible with the surrounding area—such as an application to place an outdoor amusement park in the middle of a subdivision. *See generally* Galv. Ord. 29-40, including Ord. Nos. 93-33, 98-52, 08-021, 98-16 (Appendix A). Therefore, in a GLUP application proposing to develop land to a "permitted use," the Planning Commission has discretion to consider compatibility with neighboring properties when deciding whether to grant or deny it. *See generally id.*

*Id*. p.42. She then advised that "any questions that you might have on the line of since it is listed as a use, what's the legal implication, that would be better answered in close[d] session." *Id*. Ms. Palumbo made clear that before going into closed session, all factual questions should be answered in the public meeting. *Id*. pp.42-43.

Around noon, the council broke for executive session. *See* Rec. tab 3 exh.1 ¶16 p.27. An audio recording of the closed session exists, and is the subject of the order at issue in this proceeding. According to the City, the council discussed the Shorman matter for approximately 22 minutes. The City does not contend that the closed session was for the purpose of discussing pending or threatened litigation. Rather, the City claims the closed session was necessary to obtain legal advice. No one has explained why a closed session was necessary or appropriate when written legal opinions stating city policy on council's standard of review were already publicly available. Rec. tab 14 pp.229-39.

At about 4:00 p.m., after the closed session, the council reconvened for its public meeting. Rec. tab 3 exh. 5 p.64. At that meeting, the council heard from Ms. Shorman and from members of the public, then voted to overturn the Planning Commission's decision. *Id*. pp.65-66.

Indian Beach filed the underlying lawsuit. On January 10, 2013, Indian Beach moved for the trial court to conduct an in camera inspection of the executive

session recording. Supp. Rec. tab 1. The City objected to in camera inspection. Supp. Rec. tab 2. A hearing was held on February 20, 2013. Rec. tab 20. On March 1, 2013, Judge Ellisor issued an order granting in camera review. Rec. tab 8 p.144.

The City then filed a motion for summary judgment seeking to dismiss Indian Beach's Texas Open Meetings Act or "TOMA" claim. Rec. tab 3. Indian Beach responded, and the parties filed additional reply and surreply briefs. Rec. tabs 14-17. The trial court considered the pleadings and evidence, and denied the City's motion for summary judgment—necessarily finding that a fact issue precluded summary judgment on Indian Beach's TOMA claim. Rec. tab 18 (order denying summary judgment).

On December 10, 2014, the trial court issued an order stating that after its review of the audiotape and draft transcript of the closed session, it found that the city council's closed session for the stated purpose of seeking legal advice exceeded TOMA's scope. Rec. tab 1 p.9. The court also found that a governmental body may not invoke the attorney-client privilege under Section 551.071 to convene a closed session but then discuss matters outside of that provision. *Id*. The trial court ordered the City to produce the executive session recording. *Id*. This mandamus proceeding followed.

## SUMMARY OF THE ARGUMENT

The City asks the Court to vacate its order compelling disclosure of the recording. The City's requested relief necessarily includes the improper request that this Court consider and reverse the trial court's findings in a mandamus proceeding. Not only did the trial court find that the city council exceeded TOMA's scope, the trial court also denied the City's prior motion for summary judgment which sought to dismiss Indian Beach's TOMA claim. Before entering the order at issue here, the trial court considered the pleadings and evidence on file, conducted an oral hearing at which evidence was presented, and inspected the closed session recording and transcript. The trial court then determined that the City is not entitled to judgment as a matter of law on the TOMA claim and further determined that the City violated TOMA in closed session. That is, it found city council member discussions exceeded the scope of TOMA's legal advice exception, and discussed general policy considerations.

By going beyond legal advice, the council's closed session violated TOMA, and those discussions should have been public. The council's discussions also violated TOMA in another way: by privately discussing topics that were not properly noticed for discussion in any meeting agenda, city council not only exceeded the legal advice exception, but also violated TOMA's notice requirements.

6

Because sufficient evidence supports the trial court's finding and order, mandamus relief must be denied. In the alternative, if the Court holds the trial court's order compels production of recordings not relevant to the underlying litigation, mandamus may be conditionally granted only in part, to allow the trial court to reform its order and ensure production of only the recording's relevant portions.

## ARGUMENT

The trial court did not abuse its discretion when it reviewed the pleadings and evidence and found the city council exceeded the narrow scope of the Texas Open Meetings Act's exception allowing closed sessions to obtain legal advice; nor did the trial court abuse its discretion by ordering the City to produce the taped recording of the actions exceeding the open meetings exception for the Shorman matter.

## A. Standard of Review and Applicable Law

### 1. Standard of Review in Mandamus Proceedings

Mandamus will only issue to correct a clear abuse of discretion. *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex. 1992) (orig. proceeding). A trial court abuses its discretion if it acts without reference to any guiding rules or principles, or acts in an arbitrary or unreasonable manner. *In re Ford Motor Co.,* 165 S.W.3d 315, 317 (Tex. 2005); *In re EPIC Holdings, Inc.*, 985 S.W.2d 41, 56 (Tex. 1998) (orig. proceeding). Relators face a very heavy burden to show abuse of discretion, as they must "establish that the facts and law permit the trial court to make but one decision." *In re Epic Holdings*, 985 S.W.2d at 56. Failing this, mandamus relief must be denied.

An appellate court will not determine fact questions on mandamus, or substitute its own judgment for the trial court's judgment. *Id*. (citing *Walker*, 827 S.W.2d at 839). Where the trial court has resolved a factual issue, a reviewing court must defer to that resolution. *Id*. Therefore, if "some evidence reasonably

8

supports the trial court's decision," no abuse of discretion has occurred and mandamus cannot issue. *Id.* (citing *Davis v. Huey*, 571 S.W.2d 859, 862 (Tex. 1978)); *see also GAF Corp. v. Caldwell*, 839 S.W.2d 149, 150 (Tex. App.—Houston [14th Dist.] 1992, orig. proceeding) ("Even if the reviewing court would have decided the issue differently, it cannot substitute its decision for that of the trial court unless the decision is shown to be arbitrary and unreasonable").

### 2. The Texas Open Meetings Act

The Texas Open Meetings Act requires that "every regular, special, or called meeting or session of every governmental body shall be open to the public, except as provided by [TOMA]." TEX. GOV'T CODE § 551.002 (Vernon 2012). TOMA's scope is broad, and its exceptions are few, and are narrowly construed—this is "consistent with the recommendation of Woodrow Wilson that 'Government ought to be all outside and no inside.'" *Acker v. Tex. Water Comm'n,* 790 S.W.2d 299, 300 (Tex. 1990) (citing *Cox Enter., Inc. v. Bd. of Trustees*, 706 S.W.2d 956, 958 (Tex. 1986) and quoting Woodrow Wilson, *The New Freedom* 76 (1961)); *see also City of Farmers Branch, et.al v. Ramos*, 235 S.W.3d 462, 466 (Tex. App.—Dallas 2007, no pet.) (TOMA requires every meeting of a governmental body shall be open to the public, with certain narrowly drawn exceptions). TOMA's provisions are mandatory, and must be liberally construed in favor of open government. *City of Farmers Branch*, 235 S.W.3d at 466-67.

9

The Texas Supreme Court mandates 'exact and literal compliance' with TOMA. *Acker*, 790 S.W.2d at 300.; *see also City of San Antonio v. Fourth Court of Appeals*, 820 S.W.2d 762, 768 (Tex. 1991); *Gardner v. Herring*, 21 S.W.3d 767, 776 (Tex. App.—Amarillo 2000, no pet.); *Markowski v. City of Marlin*, 940 S.W.2d 720, 724 (Tex. App.—Waco 1997, writ denied). TOMA "simply does not permit closed meetings…except where…specifically authorized." Tex. Atty. Gen. Op. MW-0578 at 3 (1982) (stating Texas Employment Commission cannot hold closed sessions to review unemployment insurance benefits despite risk that embarrassing information could be publicly disclosed); *see also* Tex. Atty. Gen. Letter Op. No. 96-058 (testing committees may not use executive session to shield test questions from public).

TOMA's few exceptions are narrowly drawn—including the attorney advice exception under section 551.071. *See Acker*, 790 S.W.2d at 300; *Cox Enter.*, 706 S.W.2d at 958. Under Section 551.071, a governmental body <u>may not</u> conduct private consultations with its attorney unless it seeks advice about (1) pending or contemplated litigation or (2) a settlement offer, or (3) on a matter in which the duty of the attorney to the governmental body under the Texas Disciplinary Rules of Professional Conduct clearly conflicts with TOMA. TEX. GOV'T CODE § 551.071 (Vernon 2012). The City argues the third exception shields the executive session from disclosure because the Council sought legal advice. The City does not

claim that any other exception applies to its private discussion about the Shorman matter.

### 3. The City bears the burden of establishing privilege or a TOMA exception.

Alleging an exception to TOMA is an affirmative defense that the governmental entity bears the burden to prove. *City of Farmers Branch*, 235 S.W.3d at 466 (citing *Olympic Waste Servs. v. City of Grand Saline*, 204 S.W.3d 496, 504 (Tex. App.—Tyler 2000, no pet.)). Similarly, a party asserting a privilege has the burden to establish that privilege. *In re E.I. DuPont de Nemours and Co.*, 130 S.W.3d 218, 223 (Tex. 2004).

The trial court found the City did not meet its burden, because it found the council's discussions violated TOMA's scope and that general discussions of policy unrelated to legal matters are improper under TOMA. Rec. tab 1 p.9. If discussion at the closed session exceeded TOMA's scope, the communications at issue are not privileged. *See* Tex. Atty. Gen. Op. No. JC-0506 (2002) (if the attorney-client privilege does not apply to an attorney-client consultation closed under section 551.071 a court may find the governmental body violated TOMA); *see also Fairchild v. Lib. Indep. Sch. Dist.*, 466 F. Supp.2d 817, 823 (E.D. Tex. 2006) (TOMA exception could not shield tapes that ISD had no expectation of privacy in, where plaintiff was present at the meeting). Here, because the City did not meet its burden to establish privilege, the trial court could not have abused its

discretion in ordering production of the closed session recording. *See Olympic Waste Servs.*, 204 S.W.3d at 504 (evidence simultaneously showed city did not establish TOMA exception as an affirmative defense and that the city violated TOMA).

B. <u>**Response to the City's discussion on Indian Beach's allegations**</u>

As an initial matter, Indian Beach must respond to the City's statement that Indian Beach's pleadings "are based on incorrect law." Br. at 17. This strong pronouncement lacks any explanation or citation to case law or statute. Rather, the statutes, case law, and relevant Attorney General opinions cited herein show that, if the City Council exceeded the narrow TOMA exception for seeking legal advice during the 22 minutes that they privately discussed the Shorman matter, their closed session was illegal—just as Indian Beach alleges. *See Acker*, 790 S.W.2d at 300; *Gardner*, 21 S.W.3d at 776; *Olympic*, 204 S.W.3d at 503-04; *Finlan v. City of Dallas*, 888 F. Supp. 779, 783 (N.D. Tex. 1995).

C. <u>**The trial court's factual determination was not arbitrary or unreasonable.**</u>

    1. **Procedures taken before or after a closed session cannot cure TOMA violations that occur *during* closed session.**

There is no dispute that the executive session qualified as a meeting of a quorum of the city council under TOMA. "When a majority of a public decision-making body is considering a pending issue, there can be no 'informal' discussion.

There is either formal consideration of a matter in compliance with the Open Meetings Act, or an illegal meeting. *Acker*, 790 S.W.2d at 300.

The City states it complied with TOMA because a final vote occurred in public hearing, and because it alleges it properly noticed the Shorman matter on its agenda. The City's argument implies that if it meets TOMA's notice requirements and makes a formal vote in public meeting, it can discuss anything it wants to in executive session. In fact, the City's attorney told the trial court that it does not matter what was discussed during the executive session. *See* Rec. tab 20 p.319 ("I think that this open meeting thing is very overworked. No one likes closed meetings but sometimes they're necessary. Regardless of what went on back there, **in this situation here I don't think it matters what they did back there**. There was hours and hours of this thing outside talked about in the public. I was even there for some of it.") (emphasis added).

The argument that it does not matter what goes on in executive session as long as there is some amount of deliberation or a final vote in public directly contradicts TOMA and well-established case law on TOMA. *See Acker*, 790 S.W.2d at 300; *Cox Enter.,* 706 S.W.2d at 959; *Finlan*, 888 F. Supp. at 783. Procedural compliance with TOMA in areas such as notice or a final voting does not, and cannot, excuse overstepping TOMA's strict limitations on executive sessions. *See Finlan*, 888 F. Supp. at 783 (if TOMA exception does not apply and a

closed meeting is held then the meeting violates TOMA regardless of whether it complied with the statute's procedural steps).

Executive sessions cannot be invoked to circumvent TOMA, merely because an exception to TOMA is referenced. *Cox Enter.,* 706 S.W.2d at 959. Instead, "[t]he executive and legislative decisions of our governmental officials as well as the underlying reasoning must be discussed openly before the public rather than secretly behind closed doors." *Acker*, 790 S.W.2d at 300 (citing Acts 1967, ch. 271, § 7, 1967 Tex. Gen. Laws 597, 598).[6] In *Acker*, a permit application for a wastewater treatment plant was considered in public hearing, and Acker alleged that during a bathroom break from the public hearing, two of the three Commissioners were overheard discussing the application and Acker's costs associated with a subdivision ordinance. *Acker*, 790 S.W.2d at 300. The two Commissioners voted to deny the permit when the hearing reconvened. *Id.* The Texas Supreme Court admonished this alleged behavior, stating that the law requires a state agency's decisionmaking in contested administrative cases (such as in this case) to be open. *Id.* at 299. The Court then held that a meeting of a majority of the Commissioners to privately discuss contested issues violates TOMA. *Id.* at 302. Because *Acker* was an appeal from summary judgment, the Court found the Commissioners' affidavits raised fact issues requiring a trial on the question of

---

[6] *Acker* and *Cox* are two of the most-cited Texas Supreme Court cases on TOMA; the City fails to cite either of them.

whether the Commissioners did discuss the permit application. *Id*. The City's suggestion that it does not matter what is discussed in executive session is flatly contradicted by binding precedent.

### 2. TOMA's legal advice exception is narrow, and any discussion straying from legal advice is improper and illegal.

TOMA does allow for closed discussions for the very strict and narrow purpose of obtaining legal advice. *See* Tex. Atty. Gen. Op. JM-100 at 2 (1983) (attorney-client privilege applies under TOMA but "the communication must be related to an opinion on law or legal services or assistance in some legal proceeding."). This exception is restricted to either a specific legal proceeding—which does not apply here—or to "legal matters." *Id*. Once the conversation strays into other topics such as "[g]eneral discussion of policy" TOMA's narrow legal advice exception is exceeded. *Id*. Examples of communications that exceed TOMA's attorney-client exception are discussions of the merits of a proposed contract, financial considerations, or other nonlegal matters during executive session. Tex. Atty. Gen. Op. JC-0233 at 3-4 (2000); *see also Olympic Waste Servs.*, 204 S.W.3d at 503-04 (discussion about resulting contractual options exceeded TOMA's legal advice exception); *Finlan* 888 F. Supp. at 790 ("[i]t is hard" to see how the "specific, limited, and narrow" real estate exception to TOMA applies to "lobbying plans in the Texas legislature"); *Bd. of Adjustment of City of Univ. Park, Tex. v. Legacy Hillcrest Inv., L.P.*, No. 05-13-1128-CV, 2014

15

WL 6871403, at *5 (Tex. App.—Dallas 2014, no pet. h.) (finding executive session did not exceed legal advice scope when the evidence showed that the merits of the cases were not discussed).[7]

The City argues that privilege must attach "to the complete communication between client and counsel." Br. at 15. This broadly stated rule cannot be applied to create a gaping hole in TOMA that would allow governmental bodies to shield deliberations from the public using the guise of privilege. *See Acker*, 790 S.W.2d at 301 (holding officials cannot be allowed to meet and deliberate privately about contested proceedings without eviscerating TOMA). Texas' requirement that government shall be open at all levels, including administrative decisionmaking, requires governmental bodies to carefully consult with their attorneys so that their discussions do not exceed the realm of legal advice. *See City of San Antonio*, 820 S.W.2d at 765 (TOMA's purposes include enabling public access to, and increasing public knowledge of, government decisionmaking). The city council understood this (*see* Rec. tab 3 exh. 3 p.43), but the trial court found the council did not restrict its discussions accordingly. Even case law that discusses only privilege issues, and not TOMA issues, recognizes that the attorney-client privilege cannot be used to shield or cloak nonprivileged communications. *See Huie v.*

---

[7] The City cites *Hillcrest* in support of its argument. *Hillcrest* rested on evidence establishing that the merits of the cases were *not* discussed in closed session. *Bd. of Adjustment of City of Univ. Park,* 2014 WL 6871403, at *5. Here, the trial court found the city council's discussions exceeded TOMA's scope and delved into general policy considerations. Rec. tab 1.

*DeShazo*, 922 S.W.2d 920, 923 (Tex. 1996). Here, when legal advice ends and discussions turn to general policy or other nonprivileged matters, TOMA is exceeded.

Texas' treatment of providing only narrow substantive leeway for attorney-client communications in closed session is consistent with other states' treatment of the attorney-client exception to public meetings. *See* Tex. Atty. Gen. Op. JC-0233 at 4 (2000) (citing *City of Prescott v. Town of Chino Valley*, 803 P.2d 891, 896 (Ariz. 1990) for its statement that legal advice does not include discussing merits of enacting legislation; *Underwood v. City of Presque Isle*, 715 A.2d 148 (Me. 1998) holding that a zoning board cannot deliberate on the merits of an application in closed session; and *People v. Whitney*, 578 N.W.2d 329, 337 (Mich. App. 1998) holding that a discussion of a legal opinion in a closed meeting must be limited to legal advice and does not authorize discussion of public policy).

The City cites *Tex. State Bd. of Pub. Accountancy v. Bass* in support of its argument. *Tex. State Bd. of Pub. Accountancy v. Bass*, 366 S.W.3d 751 (Tex. App.—Austin 2012, no pet.). That case involved review of administrative disciplinary proceedings against Enron accountants, and held against the accountants. *Id*. at 752. In *Bass*, the parties filed cross-motions for summary judgment, and the Austin Court of Appeals considered whether Bass' proof of a TOMA violation related sufficiently to his requested relief to void the Board's

vote. *Id.* at 762-763. *Bass* supports that, if a governmental body convenes a closed session to obtain legal advice, the communications *must* be related to an opinion on law or legal services, or assistance in some legal proceeding. *Id.* at 759. But *Bass* is an outlier among TOMA cases, and among summary-judgment cases, in that it (1) considered discussions in a public meeting as "conclusive" evidence on summary judgment to defeat a claim that the board violated the scope of a separate, *closed* executive session (its finding was not tested in any petition for review), and in that it (2) states to establish that the Board's orders violated TOMA, the accountants had to show that an actual vote or decision was made in closed session. *Id.* at 762. The second statement cannot be read or applied on its own without contradicting TOMA and Texas case law on TOMA. TOMA's narrow exceptions *can* be violated in ways other than taking a final vote in closed session. Several cases and Attorney General opinions provide that exceeding the scope of a TOMA exception violates TOMA. *Gardner*, 21 S.W.3d at 776 (evidence supported that TOMA's section 551.071 exception was exceeded); *Finlan*, 888 F. Supp. at 783; Tex. Atty. Gen. Op. JM-100 at 2. *Bass* appears to rest its holding on a link between the TOMA allegations in that case and the Enron accountants' requested relief. It cannot control here, because the ultimate relief is not at issue here. The question in this proceeding is whether the trial court abused its discretion in its order, including in its finding that the city council improperly exceeded TOMA in closed

18

session. The trial court's order is supported by ample evidence; the court did not abuse its discretion.

### 3. The trial court's order determined facts that cannot be challenged on mandamus.

The trial court's determination of any fact is not reviewable by this Court on mandamus. The trial court reviewed the recording and transcript of the closed session, and found that (1) during closed session, the council's discussions exceeded the stated purpose of seeking legal advice and (2) a governmental body may not invoke the attorney-client privilege under Section 551.071 to convene a closed session but then discuss matters outside of that provision. Rec. tab 1, p.9.

Apart from the closed session recording, other evidence indicates that the council strayed from pure legal advice, as TOMA requires. This makes sense, because if no evidence existed other than the closed session recording, Indian Beach would never have known to bring a suit alleging a TOMA violation. The additional evidence includes:

- Evidence submitted at the hearing on Indian Beach's motion for court review of closed executive session. Hearing Exhibits 5D and 5E are the Planning Commission's verbatim minutes concerning the Shorman GLUP application, and hearing exhibit 6 includes Ms. Shorman's appeal, the staff report, 20 pages of handouts including the GLUP site plan, and the February 23, 2012 regular council meeting minutes. Rec. tab 20 exhs. 5D, 5E, 6 at docs. 16-1 & 16-2.

- All evidence submitted either for or against the City's summary judgment motion. The summary-judgment evidence includes the city council's workshop agenda, transcript and video, the 4:00 p.m.

19

council agenda and meeting minutes (Rec. tab 3 exhibits 1-6), the verbatim minutes from the two Planning Commission meetings, Ms. Shorman's GLUP appeal, legal opinions issued by the City Attorney regarding the appropriate standard of review in GLUP appeals to city council, and applicable City ordinances. Rec. tab 14 at pp. 187-258 (the exhibits to Indian Beach's response to summary judgment are not tabbed in the mandamus record that the City provided to the Court). The trial court considered this evidence and all pleadings on file, and denied the City's summary judgment motion on June 30, 2014—well before it issued the order that is the subject of this proceeding—necessarily finding that Indian Beach's TOMA claim did not fail as a matter of law. *See* Rec. tab 18.

- The length of the closed session deliberation. According to the City, the council discussed the Shorman matter in closed session for 22 minutes. The sheer length of this discussion indicates the council discussed more than pure legal advice. *See Gardner v. Herring*, 21 S.W.3d 767, 771 (Tex. App.—Amarillo 2000, no pet.).

  In *Gardner*, the court held that summary judgment dismissing a TOMA violation was not proper, as some evidence showed a quorum of the board talked outside of a public hearing "for about twenty minutes," the subject at least partially concerned Gardner's lawsuit against Herring individually, and one of the board members responded to the statement about the lawsuit. *Id*. *Gardner* held that, "given the time period which lapsed," the subject of the lawsuit, the fact that a quorum of the board was present, the "potential affect of the suit upon the district's official acts," and the fact that some response to the lawsuit disclosure was made, one could reasonably infer that a verbal exchange about a matter of public business occurred. *Id*. The *Gardner* court noted its holding complied with the Texas Supreme Court's explicit instruction to apply TOMA in an exacting and literal manner. *Id*. at 772 (citing *Acker*, 790 S.W.2d at 300).

  Here, the length of the closed session discussion on the Shorman matter is especially important, because the City only urges a legal advice exception, and does not contend that a closed session was needed to discuss pending or threatened litigation, which could entail a more lengthy discussion of facts, pleadings, or allegations.

20

Instead, the City's attorney made clear that the council members should discuss all factual questions during the public workshop (Rec. tab 3 exh.2 p.42-43), which indicates that any legal advice sought in closed session should be targeted—and short.

The subject matter of the closed session—purportedly seeking legal advice relating to the council's standard of review—also begs the question why that issue must be addressed in closed session, especially where the City already possessed legal opinions as part of the public record that set out the City's established standard. Rec. tab 14 pp.229-239; *see also* Rec. tab 3 exh. 2 p.41 (council member stating legal opinion actually answers her question).

- <u>Comments during the workshop meeting</u>. At the workshop meeting, one council member asked a question that prompted the city attorney to state that legal advice must be given in closed session. Rec. tab 3 exh.2 p.42-43. The question was whether the council could review Ms. Shorman's GLUP appeal in the same way they would review a specific use permit. *Id.* During the workshop, the council was advised that it must review for an abuse of discretion. Rec. tab 3 exh.2 p.34 ("..what's before you is standard of review. And I'm not sure if our city attorney wants to add anything here; but what you're looking at is what is a use [sic] of discretion…"). That advice is consistent with written legal opinions from the City's attorneys, which were provided to the during the workshop meeting. Rec. tab 14 pp.229-239. Considering the question posed during the workshop, the established standard of review, and the length of the closed deliberations, there is a clear indication that the conversation strayed into other topics such as general discussions of policy—and therefore improperly exceeded TOMA's scope. *See* Tex. Atty. Gen. Op. JM-100 at 2 (1983); *see also* Rec. tab 1.

Therefore, even apart from the closed session recording, the trial court had ample evidence on which to base his conclusion that the council exceeded its scope of allowable discussion during closed session.

Even if this Court would have found differently from the trial court, the trial court's order cannot be overturned unless the City establishes Judge Ellisor could only have reached one decision. *Walker*, 827 S.W.2d at 839; *Diocese of Galveston-Houston v. Stone*, 892 S.W.2d 169, 174 (Tex. App.—Houston [14th Dist.] 1994, orig. proceeding); *GAF Corp.*, 839 S.W.2d at 150; *see also In re La. Tex. Healthcare Mgmt., L.L.C.,* 349 S.W.3d 688, 689 (Tex. App.—Houston [14th Dist.] 2011, orig. proceeding) (denying petition for writ of mandamus because trial court's implied finding supported order denying motion to disqualify counsel "Because the record supports the trial court's implied finding that relators waived their right to seek disqualification, we deny the petition.").

In *Killam Ranch Properties, Ltd. v. Webb County*, allegations were made that the county improperly convened an executive session to negotiate the sale of county property. *Killam Ranch Properties, Ltd. v. Webb County,* 376 S.W.3d 146, 157 (Tex. App.—San Antonio 2012, pet. denied) (en banc op. on reh.). Killam appealed the denial of his summary judgment motion, in support of which he had submitted the meeting minutes from the public meeting. *Id*. at 158. The minutes indicated the executive session convened on issues related to sale of the property, and was requested pursuant to TOMA's attorney consultation and real estate exceptions. *Id*. The Fourth Court of Appeals held Killam's evidence raised a fact issue on whether the privilege applies, as the county had alleged. *Id*. *Killam*

supports that the question of whether TOMA was exceeded in executive session is a fact question for the court. *See also Walker*, 827 S.W.2d at 839; *Diocese of Galveston-Houston*, 892 S.W.2d at 174.

In another mandamus case involving privilege, this Court refused to disturb the trial court's factual finding as to whether a party intended to waive the attorney-client privilege through production. *See In re Carbo Ceramics Inc.*, 81 S.W.3d 369, 376-77 (Tex. App.—Houston [14th Dist.] 2002, orig. proceeding). The facts there showed that "the trial court could have determined, in her discretion, that Carbo intended to waive its claim of attorney-client privilege…." *Id*. Therefore, the court did not abuse its discretion in ordering production. *Id*.

Because the trial court's order is supported by evidence, the trial court could not have abused its discretion and mandamus must be denied.

### 4. The City's characterizations of the recording's contents should not be considered.

The City argues that the trial court's fact finding that the council improperly engaged in a general discussion of policy unrelated to legal matters "is not the case." Br. at 18. This appears to attack the trial court's determination of fact from its review of the executive session recording. This is improper on mandamus. It also appears to invite this Court to review the closed session audiotape and to substitute its own judgment for the trial court's—which is also improper in a mandamus proceeding. *Id*.

Because Indian Beach has never had the opportunity to review the recording of the closed session, it has no way to respond to the City's characterization of the contents of that recording. The City, at several places in its brief, states facts with no citation that purportedly support its disagreement with the trial court's findings about the recording's contents. For example, the City argues that the council discussed a legal matter, and did not make a "final vote" in the closed meeting. *See* Br. at 18. Throughout its brief—including at pages 5, 8, 9, 18, and 22—the City makes conclusory statements that it "strictly complied" with TOMA by deliberating or consulting with its attorney concerning the law. Indian Beach is deprived of any ability to respond to these arguments because it has not reviewed the closed session recording. Therefore, Indian Beach asks the Court not to consider any of the City's arguments about what the recording does, or does not, include. *See, e.g., Markowski*, 940 S.W.2d at 725 (although appellate court did not consider the executive session recording as evidence it did consider the trial court's finding about whether TOMA was exceeded since *trial court* reviewed the recording).

Should the Court consider the City's argument about the contents of the recording, it is clear that *any* private discussion in the executive session that strayed from legal advice is improper and unauthorized under TOMA. This is what the trial court found in its order, which ample evidence supports..

24

## D. **Extraneous recordings are not sought.**

Indian Beach asked the trial court to review the executive session recording to determine whether the city council's actions relating to the Shorman matter exceeded TOMA's scope. The trial court found the council did exceed TOMA's requirements relating to Shorman during closed session. Of course, Indian Beach only seeks the portion of the closed session relevant to this litigation. If this Court finds the trial court's order would require disclosure of information not related to the underlying case, the Court may instruct the trial court to reform its order to require production of only the portions relevant to this case. *See In Re Geico Gen. Ins. Co.*, No. 14-06-00423-CV, 2006 WL 3511694, at *2 (Tex. App.—Houston [14th Dist.] Dec. 7, 2006, orig. proceeding) (denying mandamus relief with respect to the amount of fees awarded but conditionally granting mandamus in part to direct trial court to reform its order and omit the requirement to pay fees within a certain time period).

## E. **If the council strayed from its posted agenda topic, it violated TOMA's notice requirements.**

The City must give written notice of the date, hour, place and subject of each meeting held by Council. TEX. GOV'T CODE § 551.041 (Vernon 2012). The notice provided by the governmental body must be sufficiently specific to alert the general public to the topics to be considered at the upcoming meeting. *Cox Enter.*, 706 S.W.2d at 959; *City of Farmers Branch*, 235 S.W.3d at 466-67.

No notice of *executive* session for the Shorman matter was posted. Rec. tab 3 exh. 1 pg. 25 & exh. 4 p.57. The council's then-interim City Attorney stated at the workshop meeting that Government Code Section 551.071 allows the mayor to announce a closed session in order to receive legal advice "because this is a properly posted agenda item." Rec. tab 3 exh.2 p.42 (transcript of workshop meeting). The notice of meeting for February 23rd's workshop and 4:00 p.m. meetings included this statement:

> Public hearing and consider for action the appeal (12PA-10) of the City of Galveston Planning Commission's failure to approve Planning Case Number I IP-137 relating to a request for a General Land Use Plan in conjunction with the development of a dog kennel in a Planned Development (PD) zoning district. Property is legally described as Abstract 121. Hall & Jones Survey. Tract 69-1, 4,000 Acres. in the City and County of Galveston. Texas, and more commonly known as 18601 Warrior Road. Appellant: Judy Shorman. Applicant and Property Owner: Judy Shorman.

Rec. tab 3 exh. 1 pg. 25 & exh. 4 p.57. The legal advice must pertain to the posted agenda item—Ms. Shorman's appeal. It may not delve into general procedures concerning GLUP appellate standards of review, or into nonlegal topics such as deciding not to follow established standards of review.

If the executive session discussions exceeded the legal advice exception (as limited to the public notice for the Shorman matter), as the trial court found, then TOMA's notice requirements were also violated. For example, the City did not publish any notice of an intent to hold a closed session to generally discuss or

modify the City's policy on the city council's standard for reviewing GLUP applications, or to discuss City Ordinances dealing with the Planning Commission's discretion in GLUP applications, or whether the City's policy should be changed to remove the Planning Commission's discretion in determining GLUP applications.[8]

Whether proper notice was given is typically a fact issue. Tex. Atty. Gen. Op. JC-0057 (1999), Tex. Atty. Gen. Op. DM-98 at 4 (1992). Notice can be insufficient as a matter of law—for example, where no notice is provided at all, or in the case of the *Cox Enterprises, Inc. v. Board of Trustees*, general statements about "personnel" or "litigation" or "real estate matters" were too general to provide adequate notice under TOMA that a topic was to be discussed in closed session, "particularly where the subject slated for discussion was one of special interest to the public." *Cox Enter.*, 706 S.W.2d at 959.  Based upon the trial court's finding that the discussions at closed session exceeded the legal advice exception, the meeting's notice was insufficient.

Notably, at page 9, the City describes the closed discussion as pertaining to the city council's discretion to grant or deny Shorman's permit application—this

---

[8] Pursuant to Section 12 of Article II of the Charter of the City of Galveston "the Council shall legislate by ordinance only and the enacting clause of every ordinance shall be 'Be It Ordained by the city council of the City of Galveston […]'. Every proposed ordinance shall be in writing and shall be read, either in full or by descriptive caption, in open meeting, before any vote is taken thereon, provided, however, that any proposed ordinance that is read by descriptive caption only shall be available for public inspection in the office of the City Secretary not less than seventy-two (72) hours prior to adoption […]". *See* Appendix B.

27

description alone belies the improper scope of the executive session, since council did not have before it a motion to grant or deny the permit application. Instead, council was faced with (and noticed on the agenda) an appeal from the *Planning Commission's* action; it was asked to review the Planning Commission's action with respect to the requested GLUP application for abuse of discretion. Because the city council violated TOMA's notice provisions, the extraneous executive session discussions should not have occurred, and trial court could not have abused its discretion. Mandamus should be denied.

## CONCLUSION AND PRAYER

The trial court properly found that Galveston's city council exceeded its statutory authority to meet in closed session. With that finding in mind, the court properly ordered the City to produce the executive session recording. Indian Beach therefore prays this Court deny the City's request for mandamus relief. In the alternative, mandamus may be conditionally granted only in part to allow the trial court to reform its order to expressly omit production of any portion of the recording that does not relate to the Shorman matter, as Indian Beach only seeks closed session deliberations that relate to the underlying proceeding. Indian Beach respectfully requests all other relief to which it is entitled, whether at equity or law.

28

Respectfully submitted,

By: /s/ Angie Olalde
Andrew J. Mytelka
State Bar No. 14767700
Stephen G. Schulz
State Bar No. 17848300Angie Olalde
State Bar No. 24049015
GREER, HERZ & ADAMS, L.L.P.
2525 South Shore Blvd., Ste. 203
League City, Texas 77573
(409) 797-3200 (Telephone)
(281) 538-3791 (Facsimile)

COUNSEL FOR INDIAN BEACH
PROPERTY OWNERS'
ASSOCIATION, INC.

## CERTIFICATION

I hereby certify that I have reviewed this Response, and I conclude that every factual statement therein is supported by competent evidence included in the appendix or record.

/s/ Angie Olalde

## CERTIFICATE OF COMPLIANCE

Pursuant to Texas Rule of Appellate Procedure 9.4, I certify that there are 7,094 words in this document, excepting those portions of the brief listed in Rule 9.4(i)(1), as calculated by the word count feature of Microsoft Word 2010, which was used to prepare this document.

/s/ Angie Olalde

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing document was served pursuant to Texas Rule of Appellate Procedure 9.5 on the <u>9th</u> day of January, 2015 upon the following counsel of record:


John J. Hightower                 ***Via Electronic Service and via e-mail***
Scott Bounds
Eric C. Farrar
OLSON & OLSON, L.L.P.
Wortham Tower, Suite 600
2727 Allen parkway
Houston, Texas 77019

*Counsel for Relators*

Robert Shattuck, Jr.          ***Via electronic service & e-mail to rvshattuck@aol.com***
1018 23rd Street
Galveston, Texas 77550

*Attorney for Judy Shorman*

Honorable John Ellisor           ***Via CMRRR***
122nd Judicial District Court
600 59th Street, Room 4304
Galveston, Texas 77551


                              /s/ Angie Olalde
                              Angie Olalde

No. 14-14-01005-CV

In the Fourteenth Court of Appeals
Houston, Texas

---

CITY OF GALVESTON,
Relator

vs.

INDIAN BEACH PROPERTY OWNERS' ASSOCIATION, INC.,
Real Party in Interest

---

Original Proceeding on Petition for Writ of Mandamus
from the 122nd Judicial District Court
Galveston County, Texas

---

APPENDIX TO
RESPONSE TO PETITION FOR WRIT OF MANDAMUS

---

Appendix A      Portions of Section 29-40 of the City of Galveston Zoning Standards (1991), including Ordinances 93-33, 98-52, and 08-021

Appendix B      Article II, Section 12 of the Charter of the City of Galveston

1

# APPENDIX A

442

ORDINANCE NO. 93-33

AN ORDINANCE OF THE CITY OF GALVESTON, TEXAS, AMENDING CHAPTER 29,
"PLANNING AND DEVELOPMENT" OF THE CODE OF THE CITY OF GALVESTON,
1982, AS AMENDED, BY AMENDING THE ZONING STANDARDS, 1991, TO ALLOW
THE PLANNING COMMISSION TO MAKE FINAL DETERMINATION ON GENERAL LAND
USE PLANS; PROVIDING FOR A PENALTY CLAUSE; MAKING VARIOUS FINDINGS
AND PROVISIONS RELATED TO THE SUBJECT.

---

WHEREAS, the Committee on Efficiency and Economic
Development asked city staff to review ordinances that may be
amended to remove unnecessary difficulties, obstacles or delays
from the permitting and board review process: and

WHEREAS, the Department of Planning and Transportation
and the Planning Commission have considered and recommended
amendment of the zoning ordinance to provide that the Planning
Commission shall have authority to approve, approve with conditions
or modifications or deny a Specific Use Permit or a General Land
Use Plan; and

WHEREAS, the City Council of the City of Galveston has
found that it would be beneficial to grant the Planning Commission
the power to make final determination on General Land Use Plans;

NOW, THEREFORE, BE IT ORDAINED BY THE CITY COUNCIL OF THE
CITY OF GALVESTON, TEXAS:

SECTION 1. The findings and recitations set out in the
preamble to this Ordinance are found to be true and correct and
they are hereby adopted by the City Council and made a part hereof
for all purposes.

SECTION 2. That Section 29-40(b), (c) and (d) of the
Zoning Standards 1991 of the Code of the City of Galveston, 1982,
as amended, be and are hereby amended to read as follows:

"Section 29-40: PD, PLANNED DEVELOPMENT
DISTRICT

(b) Any proposed use in the Planned
Development District (PD) shall be based upon
a General Land Use Plan approved by the
Planning Commission.

(c) There will be a public hearing held by
the Planning Commission for the purpose of
considering such proposed General Land Use
Plan.

Notice of such hearing shall be published
at least ten (10) days prior to the hearing
before the Planning Commission and notices
mailed to all parties affected within 200 feet
of the site.

SECTION 4.    That it is hereby declared to be the intention of the City Council that the sections, paragraphs, sentences, clauses and phrases of this Ordinance are severable and, if any phrase, clause, sentence, paragraph or section of this Ordinance should be declared invalid by the final judgment or decree of any court of competent jurisdiction, such invalidity shall not affect any of the remaining phrases, clauses, sentences, paragraphs and sections of this Ordinance, since the same would have been enacted by the City Council without the incorporation in this Ordinance of any such invalid phrase, clause, sentence, paragraph *or* section in conflict herewith are repealed to the extent of such conflict only.

SECTION 5.    That all Ordinances or parts thereof in conflict herewith are repealed to the extent of such conflict only.

SECTION 6.    That in accordance with the provisions of Sections 12 and 13 of Article II of the City Charter this Ordinance has been publicly available in the office of the City Secretary for not less than 72 hours prior to its adoption: that this Ordinance may be read and published by descriptive caption only.

SECTION 7.    This Ordinance shall be and become effective from and after its adoption and publication in accordance with the provisions of the Charter of the City of Galveston.

**************************************

APPROVED by *the* City Council at its Regular Meeting held on the 8th day of April, 1993.

_____
Secretary for the City Council
of the City of Galveston, Texas

ORDINANCE NO. 98-52

AN ORDINANCE OF THE CITY OF GALVESTON, TEXAS, AMENDING SECTION 29-40, SUBSECTION (b), PLANNED DEVELOPMENT DISTRICT OF THE "ZONING REGULATIONS 1991", TO STATE THAT ALL GENERAL LAND USE PLANS SHALL INCLUDE A DETAILED SITE PLAN APPROVED BY THE PLANNING COMMISSION; PLANNING CASE 98P-95; MAKING VARIOUS FINDINGS AND PROVISIONS RELATED TO THE SUBJECT.

WHEREAS, the "Zoning Regulations 1991", Section 29-40 requires an approved General Land Use Plan from the Planning Commission for all development within a Planned Development Zoning District; and

WHEREAS, the "Zoning Regulations 1991", Section 29-40 does not specify the details that should be included on the required general land use plan; and

WHEREAS, the proposed code change will require all General Land Use plans to include the requirements addressed in Section 29-88 (g)(2), *Site Plan Approval,* of the *Zoning Regulations 1991*; and

WHEREAS, due to past confusion regarding the requirements to be included on a general land use plan, the Department of Planning and Transportation recommends amendment of Section 29-40 to include a detailed site plan approved by the Planning Commission; and

WHEREAS, at its meeting of July 7, 1998, the Galveston Planning Commission voted to recommend approval of Planning Case 98P-95; and

WHEREAS, the City Council deems it in the public's interest to clarify the details that should be included on the general land use plan by requiring a detailed site plan approved by the Planning Commission;

NOW, THEREFORE, BE IT ORDAINED BY THE CITY COUNCIL OF THE CITY OF GALVESTON, TEXAS:

SECTION 1. The findings and recitations set out in the preamble to this Ordinance are found to be true and correct and they are hereby adopted by the City Council and made a part hereof for all purposes.

SECTION 2. Section 29-40(b), "PD, Planned Development District" of "The Zoning Standards 1991" is hereby amended to read and provide as follows:

"(b) Any proposed use in the Planned Development Zoning District shall be based upon a General Land Use Plan, which shall include a detailed site plan pursuant to Section 29-88 (g)(2) of the "Zoning Standards 1991, as amended", and approved by the Planning Commission."

SECTION 3. It is hereby declared to be the intention of the City Council that the

**SECTION 5.** In accordance with the provisions of Sections 12 and 13 of Article II of the City Charter this Ordinance has been publicly available in the office of the City Secretary for not less than 72 hours prior to its adoption; that this Ordinance may be read and published by descriptive caption only.

**SECTION 6.** This Ordinance shall be and become effective from and after its adoption and publication in accordance with the provisions of the Charter of the City of Galveston.

************************

**APPROVED** by the City Council at its regular meeting held on the 9th day of July, 1998.

Secretary for the City Council
of the City of Galveston, Texas

ORDINANCE NO. 08-021

AN ORDINANCE OF THE CITY OF GALVESTON, TEXAS AMENDING THE GALVESTON ZONING STANDARDS, SECTION 29-88: "SITE PLAN APPROVAL," REGARDING DEVELOPMENT SUBMITTAL REQUIREMENTS AND REVIEW PROCESSES; PLANNING CASE NUMBER 08P-35; MAKING VARIOUS FINDINGS AND PROVISIONS RELATED TO THE SUBJECT

WHEREAS, the City of Galveston Zoning Standards, Section 29-88 "Site Plan Approval" indicates standards to "review, approve, approve with conditions, or disapprove development proposals." In addition, to the recommendations of standards for review of projects located within the Height and Density Development Zone, Staff has identified sections of the current regulations that need to be modified to reflect the existing administrative processes as identified in "Exhibit A" which is incorporated for all purposes. The proposed process for review incorporates both an administrative review process by City Staff and a public notice and comment process for larger scale projects by the Planning Commission; and,

WHEREAS, the proposed amendments conform to the goals of the Comprehensive Plan by improving the application review process and providing information in an expeditious manner. The process will provide approvals for all development that conforms to Section 29-107, "Height and Density Development Zone," as well as all other applicable codes, standards, and the Comprehensive Plan; and,

WHEREAS, the Planning Commission, at a special meeting on April 15, 2008 recommended approval of Planning Case 08P-35 with certain changes and,

WHEREAS, the City Council after public notice and hearing finds it in the public interest to approve Planning Case 08P-35 and to amend the Galveston Zoning Standards by amending Section 29-88 "Site Plan Approval" regarding development submittal requirements and review processes;

NOW, THEREFORE, BE IT ORDAINED BY THE CITY COUNCIL OF THE CITY OF GALVESTON, TEXAS:

SECTION 1. The findings and recitations set out in the preamble to this Ordinance are found to be true and correct and they are hereby adopted by the City Council and made a part hereof for all purposes.

SECTION 2. The Galveston Zoning Standards, Section 29-88: "Site Plan Approval" is hereby amended to read and provide as follows:

Section 29-88: SITE PLAN APPROVAL

No Building Permit shall be issued for the construction, erection or alteration of a structure or building in any zoning district where site plan approval is required by this Code until said site plan has been submitted and approved by the Department of Planning and Community Development or by whatever it may be known and until all fees have been paid, including but not limited to, fees required by section 29-212.

(a) Purpose

To provide a process by which the staff of the Department of Planning and Community Development and the Planning Commission will review, approve, approve with conditions, or disapprove development proposals; provide zoning and land use determination letters as required and provide letters of encroachment.

(b) Intent

To facilitate the permit process for the construction, erection or alteration of a structure or building in any zoning district where the review by the staff of the Department of Planning and Community Development is required. Such review shall include a determination of the project's impact on adjoining properties, traffic, noise, use intensity, and on and off street parking; the project's application of design guidelines, existing neighborhood plans, or comprehensive plan; the project's relationship to health, safety, morals, or general welfare of the public; and the project's efforts to protect and preserve historical, cultural and environmental places and areas.

To provide the public with efficient responses relating to the City of Galveston Zoning Standards and Zoning Districts.

(c) The following requires Site Plan Approval by the Department of Planning and Community Development:

(1) Beachfront Construction Certificate and Dune Protection Permit 50-feet north of dune protection line;

(2) Dune protection permit application;

(3) License to Use - Non-Permanent; and,

(4) Design approvals within Historic District.

(d) The following requires Department of Planning and Community Development staff action:

(1) Zoning letter A: a basic letter for zoning classification and land use only;

(2) ~~Land-suitability inspection~~ Zoning Letter B: a detailed letter that can address such issues as zoning classification, permitted land use, setback requirements, parking, signage and landscaping requirements, and may require a site visit by Staff, to the property; Beach front site inspection: and,

(3) Beach front site inspection, ~~and;~~

(4) ~~Letter of encroachment.~~

(e) Commercial Development includes the following:

    (1) Commercial Development (new construction)

    (2) Commercial Expansion (rehabilitation or expansion)

    (3) Multifamily Development (more than four units)

(f) The following items are exempt from Site Plan Approval fees:

    (1) Single Family residential development within all zoning districts except where subsection (b) or (c) above may apply; and,

    (2) Single family development that complies with Section 29-110, "Creation of a building site," if applicable.

(g) Procedure

    (1) An applicant may submit an application for site plan approval at the same time an application for a Building Permit is submitted, or the applicant may submit the application for site plan approval before submitting an application for a Building Permit.

    (2) The applicant for site plan approval shall submit the following information, as applicable:

        a. Data describing all processes and activities involved in the proposed use.

        b. Boundaries of the area covered by the site plan.

        c. The location of each existing and proposed structure in the area covered by the site plan, the number of stories, gross floor area, and location of entrances.

        d. The location of existing trees and natural features and a proposed planting schedule.

        e. All curb cuts, public and private streets, parking and loading areas, pedestrian walks, and lighting facilities.

        f. The type of surfacing to be used on all parking and loading areas.

        g. Provision for drainage of surface water.

        h. Projected trips and parking demand.

        i. Adjacent structures and public right of ways.

(h) Conditions for Approval

Before a proposed site plan is approved the Department of Planning and Community Development, shall ensure that the following conditions are satisfied:

    (1) The proposed uses and layout shall be compatible with adjacent uses.

    (2) Vehicular and pedestrian ingress and egress provides for the efficient and safe movement of traffic and people.

(3) Sufficient landscaping and screening exists so that the proposed development will be in harmony with and shall not be harmful to adjacent properties.

(4) The property is adequately and properly drained.

(5) Hours of operation will not affect adjacent residential development.

(6) All proposed signs must be in harmony with adjacent development and may not be in excess of actual need.

(7) Uses that may be classified as Commercial Outdoor Amusement facilities require a public announcement and written notice to the owners and occupants of real property within three hundred feet (300') of the property on which the use is proposed. Within ten days of the announcement and notification any owner or occupant of property within the City may request that the matter be presented to the Planning Commission for approval.

(i) Planning Commission Review of Planned Development (PD) Section 29-40:

(1) In accordance with Section 29-40: Planned Development District, any proposed use in the Planned Development (PD) Zoning District shall be based upon a General Land Use Plan, which shall include a detailed site plan pursuant to Section 29-88 (g)(2).

(2) There will be a Public Hearing held by the Planning Commission for the purpose of considering such proposed General Land Use Plan, as described in Section 29-40.

(j) Planning Commission Review of Height and Density Development Zone (HDDZ) Section 29-107:

(1) In accordance with Section 29-107: Height and Density Development Zone, after notice and hearing, the Planning Commission shall approve the proposed project if:

a. The proposed project promotes the vision for the character area established in the Comprehensive Plan and any City-adopted special plan for the specific zone;

b. The site design and development intensity conforms to the Design Standards and Design Guidelines set forth in Section 29-107; and,

c. The stormwater facilities, water supply, sanitary sewer service, traffic, fire protection, and adjacent streets, as evidenced by conformance with City standards, specifications and guidelines, are adequate as determined by responses from applicable City Departments during application notice process.

(2) The Planning Commission shall not approve the proposed project if it does not comply with the items listed in Section (1) above.

(h) (k) Appeal

In the event the applicant for a Building Permit does not agree with the decision of the Department of Planning and Community Development, or by whatever it may be known, the matter may be presented to the Planning Commission, with appeal to the City Council. The Council's decision shall be final.

SECTION 3.  It is hereby declared to be the intention of the City Council that the sections, paragraphs, sentences, clauses and phrases of this Ordinance are severable and, if any phrase, clause, sentence, paragraph, or section of this Ordinance should be declared invalid by the final judgment or decree of any court of competent jurisdiction, such invalidity shall not affect any of the remaining phrases, clauses, sentence, paragraphs and sections of this Ordinance.

SECTION 4.  All Ordinances or parts thereof in conflict herewith are repealed to the extent of such conflict only.

SECTION 5.  In accordance with the provisions of Section 12 and 13 of Article II of the City Charter this Ordinance has been publicly available in the office of the City Secretary for not less than 72 hours prior to its adoption; that this Ordinance may be read and published by descriptive caption only.

SECTION 6.     This Ordinance shall be and become effective from and after its adoption and publication in accordance with the provisions of the Charter of the City of Galveston.

APPROVED AS TO FORM:

_____
BARBARA TOBY BARUCH
ASSISTANT CITY ATTORNEY

I, Barbara S. Lawrence, Secretary of the City Council of the City of Galveston, do hereby certify that the foregoing is a true and correct copy of an Ordinance adopted by the City Council of the City of Galveston at a regular meeting held on the 24th day of April, 2008, as the same appears in the records of this office.

IN TESTIMONY WHEREOF, I subscribe my name hereto officially under the corporate seal of the City of Galveston this 2nd day of May, 2008.

_____
Secretary for the City Council
of the City of Galveston

ORDINANCE NO. 98-16

AN ORDINANCE OF THE CITY OF GALVESTON, TEXAS, AMENDING THE ZONING REGULATIONS 1991" OF "THE CODE OF THE CITY OF GALVESTON 1982, AS AMENDED" BY PROVIDING FOR APPEALS OF GENERAL LAND USE PLANS TO CITY COUNCIL; PLANNING CASE 98P-40; PROVIDING FOR FINDINGS OF FACT AND PROVIDING FOR AN EFFECTIVE DATE.

---

WHEREAS, the "Zoning Regulations 1991" requires individuals who wish to develop within a Planned Development Zoning district to obtain the Galveston Planning Commission's approval of a General Land Use Plan; and

WHEREAS, the "Zoning Regulations 1991" do not provide a means whereby an aggrieved party may appeal the Planning Commission's decision regarding a general land use plan; and

WHEREAS, the City Council deems it in the public's interest to provide a means whereby persons aggrieved by the denial or approval of a general land use plan may appeal to the City Council; and

WHEREAS, on March 3, 1998, the Planning Commission voted to recommend approval of Case 98P-40;

NOW, THEREFORE, BE IT ORDAINED BY THE CITY COUNCIL OF THE CITY OF GALVESTON, TEXAS:

SECTION 1.     The findings and recitations set out in the preamble to this Ordinance are found to be true and correct and they are hereby adopted by the City Council and made a part hereof for all purposes.

SECTION 2.     Section 29-40, "PD, Planned Development District" of "The Zoning Standards 1991" of "the Code of the City of Galveston 1982, as amended" is hereby amended by adopting a new sub-section (f) to read and provide as follows:

"(f)    Appeal -- General Land Use Plan.

Any person aggrieved by the Planning Commission's approval or disapproval of a general land use plan in the Planned Development District may file an appeal to the City Council. Such appeal must be filed with the Department of Planning and Transportation no later than ten (10) working days from the date of the Planning Commission's decision. The City Council may uphold or reverse the decision of the Planning Commission in which event, the City Council's decision shall be final. In addition, the City Council may refer the matter back to the Planning Commission with specific instructions to consider new information. In such event, the Planning Commission shall reconsider

## 452

SECTION 4. All Ordinances or parts thereof in conflict herewith are repealed to the extent of such conflict only.

SECTION 5. In accordance with the provisions of Section 12 and 13 of Article II of the City Charter this Ordinance has been publicly available in the office of the City Secretary for not less than 72 hours prior to its adoption; that this ordinance may be read and published
by descriptive caption only.

SECTION 6. This Ordinance shall be and become effective from and after its adoption and publication in accordance with the provisions of the Charter of the City of Galveston, Texas.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Approved by the City Council at its regular meeting held on the 26th day of March, 1998.

Secretary for the City Council of
the City of Galveston, Texas

# APPENDIX B

ARTICLE II. - THE COUNCIL

**Section 12. Procedure to Enact Legislation.** The Council shall legislate by ordinance only, and the enacting clause of every ordinance shall be "Be it Ordained by the City Council of the City of Galveston." All ordinances shall be submitted to the City Attorney for the City Attorney's approval before adoption and unless approved by the City Attorney, in writing, the City Attorney shall file with the City Secretary the City Attorney's written legal objections thereto. Every proposed ordinance shall be in writing and shall be read, either in full or by descriptive caption, in open meeting before any vote is taken thereon, provided, however, that any proposed ordinance that is read by descriptive caption only shall be available for public inspection in the office of the City Secretary not less than seventy-two (72) hours prior to adoption. All ordinances, unless otherwise provided by law or this Charter or by the terms of such ordinance, shall take effect immediately upon the final passage thereof.

(Ord. No. 77-25, § 3, 4-4-77; Ord. No. 91-95, § 4(3), 11-14-91; Ord. No. 96-59, § 5, 6-16-96)